Theodore Gault, Plaintiff-Appellant, v. Dr. Sidney Sideman, Dr. Frank Glassman and Dr. Irving Wolin, Defendants-Appellees.

Gen. No. 48,911.

First District, Third Division.

June 12, 1963.

John W. Schelthoff, of Chicago, for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Charles M. Rush and John M. O'Connor, Jr., of counsel), for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The plaintiff, Theodore Gault, filed a suit in the Circuit Court of Cook County against Dr. Sidney Side-

man, Dr. Frank Glassman, and Dr. Irvin Wolin. At the close of the plaintiff's case the trial court, on motion of the defendants, directed a verdict in their favor. The jury returned such a verdict, and the court entered judgment thereon.

The original complaint filed by the plaintiff on December 12, 1955 alleged that the defendants were licensed physicians and held themselves out to the general public as qualified and competent physicians and surgeons and as specialists in orthopedic and general surgery; that sometime prior to the 14th day of December 1953 the plaintiff retained and employed the said defendants "for reward to attend and treat the Plaintiff for a certain physical ailment or condition in his spine, commonly known as a ruptured intervertebral disc and the said Defendants, and each of them, undertook to treat the Plaintiff for the relief and cure of this condition." The plaintiff also alleged that he was not guilty of any contributory negligence. Paragraph 4 of the complaint alleged "that in the course of said treatment, the said Defendants advised the Plaintiff that his said condition could be cured by a surgical operation on the spine, and recommended to the Plaintiff that he submit himself to such an operation for the cure of his said condition, and the said Plaintiff relying upon the Defendants' representations that they could alleviate and cure his said condition consented to subjecting himself to the said operation by the said Defendants." The complaint further alleged that an operation was performed upon the plaintiff. Paragraph 6 alleged that the defendants then and there "so carelessly, negligently and improperly performed the said operation, that during the course thereof, the said Defendants carelessly, negligently and wrongfully severed, lacerated, crushed and otherwise injured certain nerves in Plaintiff's body, that as a direct and proximate result

thereof, the said Plaintiff has become permanently paralyzed and crippled in his left leg and sustained other severe injuries, as hereinafter mentioned." In his prayer for damages the plaintiff alleged that he has "suffered bodily pain and injury and mental anguish from then until now and will continue so to suffer in the future; that he has sustained a permanent loss of movement and use of his left leg and he has become permanently crippled and disabled; that he has expended, and will in the future expend, large sums of money in endeavoring to be cured of said disabilities and injuries, and he has lost and will in the future lose large sums of money by reason of being unable to follow his usual occupation as a result of said injuries."

The defendants filed an answer in which they admitted that they were licensed physicians and surgeons in the State of Illinois, and that they held themselves out to the general public as qualified and competent physicians and surgeons "and as specialists in orthopedic and general surgery." They further admitted that they were employed for reward to attend and treat the plaintiff as alleged in the complaint. They admitted due care of the plaintiff and also that they performed the operation alleged. They denied all the other allegations in the complaint.

On March 21, 1962 the case was heard before the court and a jury. Except for perfunctory testimony of a hospital librarian, the only testimony heard by the court was that of the plaintiff and of Dr. Sidney Sideman, who was called by the plaintiff as an adverse witness under section 60 of the Civil Practice Act.

The action was what is commonly referred to as an action against a physician for malpractice. Such an action ordinarily is held to sound in tort, and the instant complaint is in the same form as used prior

to the passage of the Practice Act in 1933, as set out in Puterbaugh, Common Law Pleading and Practice, sec 806, p 1016 (10th ed), and in substance corresponds to the complaint set out in 2 Nichols, Illinois Civil Practice, sec 1059, p 241 (1961 rev ed), intended for use after the passage of the Practice Act of 1933. The question as to whether such actions sound in tort or in contract has been a matter of judicial discussion since the decision in the Horse Doctor's case, YB 43 Edward III 33 (1369). In 70 CJS Physicians and Surgeons, sec 57, it is stated that because of the nature of the relationship between a physician and surgeon and a patient, the patient may sue the physician in an action sounding either in contract or tort, and whether the action is in contract or tort depends upon whether it appears from a construction of the complaint that the gravamen of the action is a breach of the contract or a breach of the duty imposed by law on the defendant by reason of his calling and the relationship existing between the parties. It is further stated that the courts have not treated the matter with any degree of consistency. In Carpenter v. Walker, 170 Ala 659, 54 So 60, the court said:

> "All the allegations as to a contract are mere matters of inducement and to show the relation between the parties, and to show that there was a breach of a duty, owing by the defendant to the plaintiff, based upon or growing out of the contractual relations between the parties. The gravamen of the action, in each count, is clearly the breach of this duty owing by the defendant to the plaintiff, and not a mere breach of the contract itself."

██ ██ The legal rules which we have been discussing apply to complaints whether they are held

100

to sound in tort or in contract and which allege that the defendant did not use ordinary care in his treatment of the plaintiff. In such actions for malpractice the physician is held responsible for any injury resulting from a want of reasonable care, skill and diligence in his practice, and the burden of proof rests upon the plaintiff. If such a complaint sounds in tort it is necessary that the plaintiff allege his freedom from contributory negligence. Had there been no amendment to the complaint there would be no question but what the trial court had properly directed a verdict for the defendants, as there was no showing made by the plaintiff of negligence or that the procedure followed by the defendants was not procedure which was proper medical practice at the time and place in question. In order for the plaintiff to prevail he would have to show by affirmative evidence, first, that the "defendant was unskillful and negligent, and, second, that his want of skill and care caused the injury to the plaintiff. If either element is lacking in the proof, no case is presented for the consideration of the jury." Wade v. Ravenswood Hospital Ass'n, 3 Ill App2d 102, 120 NE2d 345; Olander v. Johnson, 258 Ill App 89; Wallace v. Yudelson, 244 Ill App 320. It has been held that a physician is not an insurer. Yunker v. Marshall & Daly, 65 Ill App 667. The responsibility of the physician is to use reasonable care and skill. McNevins v. Lowe, 40 Ill 209. In Sims v. Parker, 41 Ill App 284, the court said:

"Proof of a bad result or of a mishap is of itself no evidence of negligence or lack of skill. The defendant is qualified to practice medicine and surgery, and the evidence of the experts in his profession shows him competent and skillful. Before a recovery could be had against him, it must be shown that his treatment was improper or negligent, not merely that he was mistaken, or

101

that his treatment resulted injuriously to plaintiff. A physician or surgeon, or one who holds himself out as such, is only bound to exercise ordinary skill and care in the treatment of a given case, and in order to hold him liable, it must be shown that he failed to exercise such skill or care. McNevins v. Lowe, 40 Ill 209.

" . . .

" 'No presumption of the absence of proper skill and attention arises from the mere fact that the patient does not recover, or that a cure was not effected.' Haire v. Reese, 7 Phil R 138."

It has also been held that where the question of proper skill or care on the part of a physician or surgeon is in issue it ordinarily must be proved by expert medical testimony. 26 ILP Medicine and Surgery, sec 37.

At the close of plaintiff's evidence the plaintiff was given leave to amend his complaint by an addition to paragraph 4 of the original complaint. As thus amended the paragraph reads as follows (amendment italicized):

"4. That in the course of said treatment, the said Defendants advised the Plaintiff that his said condition could be cured by a surgical operation on the spine, and recommended to the Plaintiff that he submit himself to such an operation for the cure of his said condition, and the said Plaintiff relying upon the Defendants' representations that they could alleviate and cure his said condition consented to subjecting himself to the said operation by the said Defendants.

"4a) *That the said defendants, and each of them, thereby expressly warranted to the plaintiff that said operation would be safe, and would effect a cure of his said condition.*"

102

Paragraph 6 of the complaint was also amended, and as amended reads (amendment italicized):

"6. That the said Defendants then and there so carelessly, negligently and improperly performed the said operation, that during the course thereof, the said Defendants carelessly, negligently and wrongfully severed, lacerated, crushed and otherwise injured certain nerves in Plaintiff's body, that as a direct and proximate result thereof, the said Plaintiff has become permanently paralyzed and crippled in his left leg and sustained other severe injuries, as hereinafter mentioned.

"6a) *That the defendants, and each of them, thereby breached the warranties made to the plaintiff.*"

The plaintiff here contends that the amended complaint states a cause of action based upon the breach by the defendants of a specific contract or warranty to cure the plaintiff. A careful reading of the complaint does not bear out that contention. The amendment to paragraph 4 has no effect whatsoever on that paragraph as stated in the original complaint. The statement that by the alleged representations made by the defendants to the plaintiff they had warranted that the operation would be safe and would effect a cure of his condition is merely a conclusion of the pleader as to the meaning of the allegations set out in the complaint, and that conclusion is not borne out by the allegations set out in paragraph 4. Barger v. First Nat. Bank of Danville, 310 Ill App 628, 633, 35 NE2d 556, 559; City of Springfield v. Kable, 306 Ill App 616, 620, 29 NE2d 675, 677. The representations were not that the defendants would cure the plaintiff, but were that an operation could cure or alleviate the condition suffered by the plain-

tiff. In spite of the amendments the complaint is still the ordinary complaint in malpractice, and the same burden rests upon the plaintiff to prove the necessary elements as heretofore set forth. It is an elementary rule of law that the issues in a case are formed by the pleadings and the allegations and proof must correspond, and a party cannot have relief under proof without allegations, nor under allegations without proof in support thereof. "Accordingly a party must recover, if at all, on and according to the case he has made for himself by his pleadings, and he cannot make one case by his averments and have judgment on another and different ground without amendment, even though the different ground is established by the proof." 30 ILP Pleading, sec 215. See also Stevenson v. Meyer, 10 Ill2d 335, 139 NE2d 740, and Burke v. Burke, 12 Ill2d 483, 487, 147 NE2d 373, 376, where the court said: "A party to a suit, either at law or in equity, cannot have relief under proofs without allegations, nor allegations without proof in support. Central States Cooperatives, Inc. v. Watson Bros. Transp., Inc., 404 Ill 566, 90 NE2d 209; Leitch v. Sanitary Dist. of Chicago, 386 Ill 433, 54 NE2d 458."

The rule applicable to the right of the court to direct a verdict at the close of the plaintiff's evidence has been stated so often that there is scarcely any necessity for the citation of authorities. In 34 ILP Trial, section 133, it is stated that a motion to direct a verdict for defendant should be allowed if when the evidence is considered in its aspects most favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom, there is a total failure of proof on one or more essential elements of the case. Lindroth v. Walgreen Co., 407 Ill 121, 130, 94 NE2d 847, 851. In McCormick v. Kopmann, 23 Ill App2d 189, 161 NE2d 720, it was held that proof

unfavorable to the plaintiff, even though the plaintiff introduced that proof, cannot be considered.

In the case before us there is no question that the plaintiff testified that defendant Sideman had stated that an operation would cure the condition under which the plaintiff was suffering, and on a motion for a directed verdict on the part of the defendant the trial court must accept that statement as being true. There is, however, another question which is necessary to be resolved by the trial court before it could enter an order overruling defendants' motion for a directed verdict, and that is as to whether the admitted facts prove all the elements of the plaintiff's case.

Under the amended pleadings in the case before us it would be necessary to show that the defendants were guilty of negligence in the performance of the operation or that they did not use proper care or skill. There is no evidence to this effect. Consequently the verdict for defendants was properly directed.

■ The plaintiff in this court strongly contends that this was an express contract by virtue of which the defendants agreed that they would "cure" the plaintiff by an operation. As we have pointed out, he does not in his amended pleadings properly allege the existence of such a contract. The amended complaint which is before us at the best could be said to be an action based on a contract by the defendants to use ordinary care in operating upon the plaintiff. We are aware that it has been held in other jurisdictions that a physician may make a contract with a patient by an express agreement with the patient to cure, and if such contract is breached an action will lie. McQuaid v. Michou, 85 NH 299, 157 A 881; Colvin v. Smith, 276 App Div 9, 92 NYS2d 794. However, the courts which lay down such a rule insist

that the complaint set out the contract and definitely show the plaintiff's reliance on such contract and on the breach thereof. Proof of the existence of the contract must be clear. In Hawkins v. McGee, 84 NH 114, 146 A 641, which was a case before the same court in which the McQuaid case was decided, an action was brought against a surgeon for the breach of an alleged warranty of the success of an operation. In that case there was testimony that the defendant, in answer to a question as to the length of time the patient would be in the hospital, replied: "Three or four days, not over four; then the boy can go home and it will be just a few days when he will go back to work with a good hand." The court said:

> "Clearly this and other testimony to the same effect would not justify a finding that the doctor contracted to complete the hospital treatment in three or four days or that the plaintiff would be able to go back to work within a few days thereafter. The above statements could only be construed as expressions of opinion or predictions as to the probable duration of the treatment and plaintiff's resulting disability, and the fact that these estimates were exceeded would impose no contractual liability upon the defendant."

Under the peculiar facts in that case the court held that a guaranty on the part of the physician to make the hand a "hundred per cent good hand" should be submitted to the jury.

If the Illinois courts would consider enforceable a warranty by a physician (to cure a patient), it would be necessary to allege and prove the making of such a warranty and the plaintiff's reliance thereon, and it would also be necessary, under the facts and circumstances of this case, to allege and prove a separate

consideration. Towell v. Gatewood, 2 Scam (3 Ill) 22–23; Wilson v. Blair, 65 Mont 155, 211 P 289, 27 ALR 1235. In the latter case the court held that where a defendant enters into a special agreement with the plaintiff under the terms of which the defendant increased his responsibility by guaranteeing the results of an operation, in order to make it a contract such a special agreement must be supported by a separate consideration, and the past consideration resulting from plaintiff's agreement to pay for the operation is not sufficient.

We have been unable to find any case in Illinois which holds that a doctor may be held liable for an agreement made by him with the patient that an operation would cure the condition from which the plaintiff was then suffering. The courts which have held that such a contract is valid and not opposed to public policy have qualified that holding by the imposition of many conditions. Safian v. Aetna Life Ins. Co., 260 App Div 765, 24 NYS2d 92, which held that where a doctor made a contract to effect a cure and fails to do so he is liable for the breach of the contract even though he uses the highest possible professional skill, nevertheless holds that the physician is not covered for such contractual liability by an insurance contract covering claims arising out of "malpractice, error or mistake," and the court said:

> "Insurance of such a contract could protect only medical charlatans. The honorable member of the medical profession is more keenly conscious than the rest of us that medicine is not an exact science, and he undertakes only to give his best judgment and skill. He knows he cannot warrant a cure."

In Stewart v. Rudner, 349 Mich 459, 84 NW2d 816, the court, after laying down the rule that the phy-

sician and patient could contract that the physician would cure, said:

> "It is proper to note, with respect to the contracts of physicians, that certain qualitative differences should be observed, since the doctor's therapeutic reassurance that his patient will be all right, not to worry, must not be converted into a binding promise by the disappointed or quarrelsome."

See also the discussion in Johnston v. Rodis, 151 F Supp 345, and in 251 F2d 917. In the latter case the court said: "Doubtless a physician's statement that he would cure a disease could seldom if ever be regarded as a warranty. . . ."

In "The Contractual Liability of Physicians and Surgeons," by Arnold J. Miller (Mass Bar), in Wash ULQ (1953), p 413, in criticism of the decision in McQuaid v. Michou, supra, the article states:

> "But it is to the more important issue of public policy rejected by the New Hampshire court that the writer of this article wishes to turn his attention. The practical effect of the court's reasoning is to treat a contract between physician and patient for medical services in the same light as any other commercial contract. If the law is to deal with a contract of this type as it would any mercantile contract and to treat the parties as though dealing at arm's length with each other, should not the physician have the corresponding rights as well as liabilities? Thus, if the physician is to be held free to contract and to be liable on his promise, no matter how foolish or ill-advised, should he not then be free to provide for his own protection in advance by the simple expedient, let us say, of having the patient sign a printed form, in consideration of his agreement

to treat him, absolving the physician of any and all liability whether based on negligence or purported representation? We are not here dealing with any question of the physician's taking any undue advantage of the patient. Of course it is clear that in other respects the relationship between the two is a confidential one, as is the relationship between attorney and client, and that a court of equity will carefully scrutinize any contractual advantage obtained by a physician from a patient. [Citing 5 Williston, Contracts, sec 1625A (rev ed 1937).] We are here talking of a contractual arrangement to be entered into prior to the establishment of the relationship. Would the courts uphold such a contract absolving the physician of liability or would they strike it down as being against public policy?

" . . .

"There are compelling arguments, then, as outlined in the foregoing, that a strong public policy permeates all aspects of any contractual arrangement between physician and patients and operates to lift it out of the field of discourse of ordinary commercial contracts. It operates to prevent the physician from escaping his responsibilities to the society he serves, and should operate, it is here contended, to protect the physician in the pursuit of his healing art against strict liability for the consequences of unguarded utterances and from the fertile imaginations of the fraudulent minded."

 The application of the ordinary rules dealing with mercantile contracts to a contract entered into between a physician and a patient in our opinion is not justified. The relationship is a peculiar relationship inasmuch as the physician cannot, and should

not, so terrify the patient by pointing out to him the manifold dangers which are present at any time the slightest surgical operation is performed. To do so might produce a psychic reaction which would seriously retard the success of the physician's treatment. All of the cases which we have read have this problem in mind, and even in the jurisdictions where it is held that a specific contract of a physician to cure the plaintiff is enforceable, nevertheless the courts have insisted that the contract be clear and specific. Attention has been called by courts to the fact that a promise to cure is not made by a competent and honorable physician and that such a physician knows that he cannot warrant a cure. Safian v. Aetna Life Ins. Co., supra. As was said in Zostautas v. St. Anthony De Padua Hospital, 23 Ill2d 326, 178 NE2d 303: "These questions involve not only an interpretation of legal history, but a balance of the legal policies of protecting the public in its dealings with the medical practitioner, and of protecting the practitioner in the pursuit of this highly essential profession from the fraudulent minded."

The plaintiff here contends that the Zostautas case supports his position. As a matter of fact it does not. The question involved in that case was as to whether the trial court properly dismissed a certain count of the complaint. In that count it was alleged that the defendant-surgeon entered into an express contract with the plaintiffs to perform a tonsillectomy upon their son "with the degree of care which physicians and surgeons of ordinary skill, care and diligence would exercise under the circumstances, and plaintiffs agreed to pay defendant the reasonable value of his professional services"; that the defendant breached his contract; and that as a result of such breach the son of the plaintiffs died. The court first determined that that count sounded in contract.

110

The count was not a specific agreement to cure, but merely to use ordinary skill in treating the patient, and the court further held that actions of this character may either sound in tort or in contract, and that if a suit was brought under the said contract count by a surviving patient the pleading would have been proper. However, it further holds that because of the provisions of the Wrongful Death Act a common law contract action is not sustainable and the court affirmed the judgment order of the trial court in dismissing the count.

Under the pleadings and evidence in this case the trial court properly directed a verdict for the defendants, and the judgment of the Circuit Court of Cook County in favor of the defendants is affirmed.

Affirmed.

DEMPSEY, PJ and SCHWARTZ, J, concur.