DISABLED AMERICAN VETERANS, Plaintiff, *v.* HAROLD S. McCLINTOCK *et al.*, Defendant—MAURICE GRAY, Counterplaintiff-Appellee, *v.* DISABLED AMERICAN VETERANS, Counterdefendant-Appellant (HAROLD S. McCLINTOCK, a/k/a HAROLD SAGER, Counterdefendant.)

(No. 54282;

First District—May 28, 1971.

Pedersen & Houpt, of Chicago, (Richard V. Houpt and Dennis J. Eslick, of counsel,) for appellant.

Arthur Morse, of Chicago, (J. S. Krakauer and Seymour Schriar, of counsel,) for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

This is an appeal by Disabled American Veterans from an order granting counter-plaintiff, Maurice Gray, an accounting and from a subsequent decree in favor of Gray in the amount of $62,429.80.

Plaintiff and Counter-Defendant, Disabled American Veterans, hereinafter called D.A.V., a charitable corporation, established in 1961 a national fund-raising program known as "Operation Rehabilitation." This program essentially consisted of the solicitation of property from individuals and organizations and its sale to gain funds for D.A.V. Defendant McClintock, under contract with D.A.V., was in charge of Operation Rehabilitation.

Pursuant to his contract with D.A.V., McClintock conducted the program until August 6, 1964. At that time D.A.V. terminated the contract and thereafter filed the primary complaint of this action charging McClintock with fraud, breach of contract and breach of fiduciary duty to D.A.V. Counter-plaintiff Gray was granted leave to intervene and filed the instant counter-claim against D.A.V. and McClintock for compensation which he alleged was due for services performed for "Operation Rehabilitation." His counter-claim stated as follows:

"7. In or about January, 1962, Counter Defendant, Disabled American Veterans, by and through its agent, Counter Defendant, Harold S. McClintock, and with the knowledge and approval of said Counter Defendant, Disabled American Veterans, entered into an oral employment agreement with Counter Plaintiff pursuant to the contracts of employment executed between Counter Defendants, Disabled American Veterans and Harold S. McClintock, * * *

8. The terms of the aforesaid employment agreement between Counter Plaintiff and Counter Defendants were:

(a) Counter Plaintiff agreed to solicit and obtain merchandise, equipment, machinery and other personal and real property from manufacturers and other businesses in the United States as charitable contributions to Counter Defendant, Disabled American Veterans;

(b) As compensation for Counter Plaintiff's aforesaid services to Counter Defendants, Counter Plaintiff was to be paid by Counter Defendants a sum equal to ten percent (10%) of all moneys due and payable by Counter Defendant, Disabled American Veterans, to Counter Defendant, Harold S. McClintock (including all moneys due and payable for expenses and services as provided for in [the contract of employment executed between Counter Defendants]) from the gross proceeds received by Coun-

ter Defendant, Disabled American Veterans, in the sale of real and personal property solicited for and donated to Counter Defendant, Disabled American Veterans, by and through the efforts of Counter Plaintiff;

(c) In addition thereto, Counter Plaintiff was to be reimbursed by Counter Defendants, or either of them, for all expenses incurred in performing his aforesaid employment, including all travel, hotel, food, telephone and other expenses."

On the motion of D.A.V. the trial of the issues raised by the counter-claim against D.A.V. was severed from trial of the other issues. After hearing the evidence the trial judge entered his decree stating detailed findings of fact, ordering D.A.V. to account to counter-plaintiff for any unpaid compensation due him and imposing a lien upon all property and proceeds from property solicited by counter-plaintiff for D.A.V. Thereafter, pursuant to the accounting rendered by D.A.V., a decree was entered giving judgment for counter-plaintiff in the amount of $62,429.80.

On appeal, D.A.V. argues that counter-plaintiff failed to prove the case pleaded in his counter-complaint. We agree. Counter-plaintiff seeks compensation from D.A.V. for services rendered under his oral contract of employment. However, his counter-complaint alleges that the oral agreement was entered into by him with D.A.V. through its agent McClintock "with the knowledge and approval" of D.A.V. "Pursuant to the contracts of employment executed between counter-defendants, Disabled American Veterans and Harold S. McClintock."

D.A.V.'s contract with McClintock, which was appended to the counter-complaint, states in pertinent part:

"(3)—McClintock agrees to use his best efforts to obtain real and personal property of value as charitable contributions to the Organization and in connection therewith, McClintock will pay all administrative expenses, including but not limited to travel, personnel, salaries, office, telephone, advertising, legal and general administrative expenses, involved in such solicitation and in obtaining such real and personal property, and any taxes assessed by governmental agencies.

(8)—The Organization agrees, in full consideration and payment for the services of McClintock and expenses incurred pursuant to paragraph "3" herein the solicitation of said charitable contributions of real and personal property, to pay to McClintock twenty-five (25%) per cent of the gross proceeds of each sale of real or personal property authorized by this agreement.

(9)—The Organization agrees, in full consideration and payment for the services of McClintock and expenses incurred, in-

cluding but not limited to travel, telephone, commissions, fees, warehousing, trucking and salaries and taxes assessed by any government agency, in the sale of said charitable contributions of real and personal property, to pay to McClintock twenty-four (24%) per cent of the gross proceeds of each sale of real or personal property authorized by this agreement.

(13)—It is understood that the foregoing compensation shall constitute the entire obligation of the Organization to McClintock under this agreement, and the Organization shall bear no costs, expenses or charges whatever, including those of arbitration, nor is McClintock authorized to contract for such on behalf of the Organization, either for the acquisition or sale of any items or real or personal property, or any other causes."

Therefore, since counter-plaintiff's oral contract with D.A.V. was based on the written contract between counter-plaintiff and McClintock, there can be no merit in his contention that he was entitled to compensation from D.A.V. The written contract specifically provides that McClintock pay all administrative expenses including personnel and salaries and that the compensation to be paid McClintock constituted the entire obligation of D.A.V. Counter-plaintiff's failure to prove the facts pleaded are fatal to his recovery under the counter-claim. See *Gault v. Sideman* (1963), 42 Ill.App.2d 96, at 104.

Counter-plaintiff also attempts to premise his recovery on a theory of apparent authority, contending that D.A.V. should be estopped from denying its liability to him because it misled him by concealing the conditions of its contract with McClintock requiring McClintock alone to compensate employees of Operation Rehabilitation.

In our opinion, counter-plaintiff's own testimony demonstrates that he could not have been misled as he contends. Counter-plaintiff stated that throughout his period of employment he did not receive any payment directly from D.A.V. National Headquarters though McClintock had told him when he began his employment that he would be paid by National Headquarters. Counter-plaintiff's testimony and D.A.V. exhibits revealed that from January 25, 1961 to July 24, 1964 he received and negotiated 249 checks in a total amount of $25,814.46 made payable to himself and drawn on accounts of McClintock Mercantile Company. Several of the checks bore notations indicating that they represented payment of compensation or commission, others bore notations indicating that they were in payment of an advancement for expenses and a larger number were without notation. This undisputed pattern of payment, established at the outset of counter-plaintiff's employment and consisting exclusively of checks drawn on McClintock Mercantile Company put

counter-plaintiff on notice that, regardless of any previous statements which McClintock may have made, counter-plaintiff's compensation did not come from D.A.V. National Headquarters. Thus, the services performed by Gray, and the payments he received therefor, were consistent with employment by McClintock only and not by D.A.V., which, in turn was consistent with D.A.V.'s contract with McClintock.

On appeal counter-plaintiff also argues that his recovery should be upheld on the basis of his third-party beneficiary rights in the contract between D.A.V. and McClintock. Examination of the pleadings reveals that the D.A.V.-McClintock contract expressly foreclosed such an arrangement. In any event, counter-plaintiff did not advance this theory at trial. It is settled law that the theory upon which a case is tried cannot be changed upon review.

The judgment is reversed and the cause is remanded with instructions to enter judgment for counter-defendant D.A.V.

Reversed and remanded with instructions.

ENGLISH, P. J., and DRUCKER, J., concur.