SUSAN ROGALA *et al.,* Plaintiffs-Appellants, *v.* ALBERT SILVA *et al.,* Defendants-Appellees.

(No. 57498; )

First District (4th Division)—November 28, 1973.

David Alswang, of Chicago, for appellants.

Blumenthal and Schwartz, of Chicago (Milton M. Blumenthal, Arthur F. Schwartz, and Richard Lee Stavins, of counsel), for appellee Alberto Silva.

Clausen, Hirsh, Miller & Gorman, of Chicago (John R. Caffrey and James T. Ferrini, of counsel), for appellee Augustana Hospital.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

The plaintiffs, Susan and Robert Rogala, commenced this action by filing a two-count complaint in the Circuit Court of Cook County. Named as defendants were Dr. Albert Silva, a physician, and the Augustana Hospital. In Count I of their complaint the Rogalas alleged the breach of an express warranty by both defendants that a sterilization operation performed upon Mrs. Rogala by Dr. Silva would result in Mrs. Rogala's inability to have further children and sought damages resulting from the birth of a child after the operation had been performed. In Count II Mrs. Rogala sought damages from Dr. Silva alone on the grounds of mental distress resulting from Dr. Silva's alleged attempts to induce her to undergo an illegal abortion.

On the day of trial, the Augustana Hospital made an oral motion to sever Counts I and II. The court granted this over the objection of the plaintiffs. At the close of the plaintiffs' evidence with respect to Count I, both defendants moved for directed verdicts, and the court granted their motions. The court then ordered the plaintiffs to proceed with the trial of Count II. Plaintiffs' counsel stated that he was unable to go to trial on Count II and requested a continuance. The court denied this motion and after ascertaining that the defendant was ready for trial, dismissed Count II for want of prosecution. The plaintiffs bring the present appeal from the order granting the directed verdicts as to Count I, the order severing Counts I and II for trial and the order dismissing Count II of their cause for want of prosecution.

We consider first whether the trial court erred in directing verdicts for the defendants at the close of the plaintiffs' evidence with respect to Count I. In that Count the plaintiffs alleged that, prior to the steriliza-

tion operation being performed, both Augustana and Dr. Silva represented, undertook, expressly warranted, contracted and agreed with the plaintiffs that if Dr. Silva were permitted to perform such surgery the plaintiff, Susan Rogala, could not become pregnant and could not bear any children and that the plaintiffs could enjoy sexual relations without any fear of the plaintiff, Susan Rogala, becoming pregnant. There was no allegation of negligence on the part of either defendant in performig the operation or that either had failed to use the degree of care and skill which would ordinarily be exercised by surgeons and hospitals under such conditions. Thus the action is different from the typical complaint sounding in malpractice in that it rests solely upon the breach of a contract to effect a specific result, the sterilization of Mrs. Rogala.

■■ Our research indicates that heretofore no court of review in Illinois has been required to consider whether an action based upon the contract of a physician to effect a particular cure will lie, although it appears that such an action has been recognized in other jurisdictions. (See, for example, *Giambozi v. Peters* (1940), 127 Conn. 380, 16 A.2d 833; *Stewart v. Rudner* (1957), 349 Mich. 459, 84 N.W.2d 816; *McQuaid v. Michou* (1932), 85 N.H. 299, 157 A. 881; *Robins v. Finestone* (1955), 308 N.Y. 843, 127 N.E.2d 330.) These jurisdictions have insisted that the contract be set forth explicitly in the complaint, proved by clear and convincing evidence and ·supported by some consideration separate from the plaintiff's agreement to pay the physician for his services. (Annot., 43 A.L.R. 3d 1221 (1972).) After reviewing these authorities we are inclined to agree with our statement in *Gault v. Sideman* (1963), 42 Ill.App.2d 96, 191 N.E.2d 436, that if the Illinois courts would consider enforceable such a warranty by a physician, it would be necessary to allege and prove the making of the warranty, the plaintiff's reliance thereon and a separate consideration.

■■ The question to be resolved by this court, then, is whether the evidence presented by the plaintiffs, taken in its most favorable light (*Pedrick v. Peoria & E. R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504) established the foregoing elements, particularly the existence of an express warranty. After reviewing the record in detail, it is our conclusion that it did not.

·The plaintiffs' evidence consisted almost entirely of the testimony of Mrs. Rogala. She testified that in July, 1965, she became pregnant with her fifth child and was referred to the obstetrical clinic at Augustana Hospital by the Illinois Lutheran Welfare League. Following her second visit to the clinic she had a conversation with a Miss Hines, the director, in which she stated that she would like to have a sterilization operation because she already had four children, was expecting a fifth and could

not afford any more. Miss Hines said that she would check into the matter and let her know at the next visit, which was scheduled for January 5, 1966.

On January 5, Miss Hines stated that the sterilization operation would be possible and that it would be performed by whichever doctor was on duty for the delivery of her baby. Miss Hines asked her if she was certain that she wanted such an operation and cautioned that it would be irreversible and that she would never be able to have any more children if she consented to it. Miss Hines also stated that the doctor's fee for the operation would be $150 and that the hospital would require an additional fee as well.

Mrs. Rogala first met Dr. Silva in the delivery room at the clinic on February 13, 1966, when he delivered her baby. Later that day she saw Miss Hines and inquired about the sterilization. Miss Hines said that it would probably be done the next morning. The next afternoon she saw Dr. Silva in the hall outside her room and inquired about the operation again. He stated that he did remember Miss Hines saying something about a clinic patient wanting a sterilization and asked her why she wanted the operation. She reiterated that she already had five children and did not feel that she could afford to raise any more, that her husband was not working regularly and that she had had difficulties with her pregnancies. Dr. Silva told her that if he were to perform the operation it would be irreversible and that she would not be able to have any more children. She stated that this was what she wanted, and Dr. Silva told her that after undergoing the operation she would be able to have sexual intercourse with her husband without becoming pregnant. He also said that if she and her husband would sign the necessary consent forms he would perform the operation. Mr. and Mrs. Rogala signed the consent forms that evening, and Dr. Silva performed the operation the next day. Two days later she was discharged from the hospital.

In our opinion, the foregoing establishes only that Miss Hines and Dr. Silva admonished Mrs. Rogala as to the seriousness of the operation that she was requesting and that, in connection with this, they expressed an opinion as to its probable outcome. Such admonitions were both necessary and proper under the circumstances and should not, in the absence of an express undertaking, be elevated to the stature of a warranty.

■■ Even in the sphere of commercial transactions, where the parties deal at arm's length, our courts have never held that a mere expression of opinion is sufficient to create a warranty. (*Towell v. Gatewood* (1839), 3. Ill. (2 Scamm.) 22.) Furthermore, as we stated in *Gault v. Sideman* (1963), 42 Ill.App.2d 96, 191 N.E.2d 436: "The application of the ordi-

nary rules dealing with mercantile contracts to a contract entered into between a physician and a patient in our opinion is not justified. The relationship is a peculiar relationship inasmuch as the physician cannot, and should not, so terrify the patient by pointing out to him the manifold dangers which are present at any time the slightest surgical operation is performed. To do so might produce a psychic reaction which would seriously retard the success of the physician's treatment." (42 Ill.App.2d at 109-10, 191 N.E.2d at 443.) Therefore the courts which have recognized an action based upon the express warranty of a physician to effect a particular cure have distinguished between so-called therapeutic reassurances that the patient will recover and express promises that treatment will produce a specific result and have stated that it is doubtful that an action for breach of warranty can ever result from a physician's expression of opinion.

We have examined the authorities cited by the appellant, particularly *Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill.2d 326, 178 N.E.2d 303, and *Doerr v. Villate* (1966), 74 Ill.App.2d 332, 220 N.E.2d 767, and find them inapposite to the decision of the present case. *Zostautas* involved a written agreement to perform a tonsilectomy with the degree of care which physicians and surgeons of ordinary skill would exercise under the circumstances and not a contract to effect a specific cure. The question presented to the court was whether an action for breach of the contract could survive the death of the patient. In *Doerr*, the plaintiffs, husband and wife, sought damages both on the ground of breach of an oral promise to produce a specified result and on the ground of breach of an implied promise to perform the treatment in a skilful manner. The court decided that the statute of limitations applicable to actions brought on contracts should apply, but did not distinguish the contract to produce a specified result from the contract to use reasonable skill in performing the treatment.

For these reasons the trial court was correct in finding that the evidence presented by the plaintiffs failed to establish the existence of any warranty as to the success of the operation and in directing a verdict in favor of the defendants on Count I of the complaint. The order will be affirmed.

We direct our attention next to whether the trial court erred in granting Augustana's oral motion to sever Counts I and II for trial. Severance is governed by section 51 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 51) which provides that "[a]n action may be severed * * * as an aid to convenience whenever it can be done without prejudice to a substantial right." The granting of a motion for severance is within the sound discretion of the trial court, and this court will not

reverse its determination unless such discretion has been manifestly abused. *Johnson v. Johnson* (1955), 5 Ill.App.2d 453, 125 N.E.2d 843.

Count I of the complaint was brought by both Mr. and Mrs. Rogala and sought damages from Augustana and Dr. Silva on the theory of breach of warranty. Count II was brought by Mrs. Rogala alone and sought damages on the ground of mental distress resulting from his attempts to induce her to undergo an abortion after she became pregnant with her sixth child. The events complained of allegedly took place between October 6 and October 16, 1966, or approximately eight months after the events alleged in Count I.

■■ Therefore Counts I and II were based upon two entirely separate transactions. They involved different parties and were based upon different theories. In view of this we believe that they were a proper subject for severance and we cannot say that the trial court abused its discretion in granting Augustana's motion.

■■ Finally we consider whether the court erred in denying the plaintiffs' motion for a continuance of the trial of Count II and dismissing the cause for want of prosecution. The granting or denial of a continuance is also within the sound discretion of the court, and its exercise of such discretion will not be disturbed unless arbitrary or capricious. *Evergreen Savings & Loan Assn. v. Hirschman* (1969), 110 Ill.App.2d 242, 249 N.E.2d 248.

In the present case the record reveals that approximately one week elapsed between the time that the plaintiffs indicated that they were ready to proceed with the trial of both counts and the time that the court directed a verdict for the defendants as to Count I and requested that the plaintiff proceed with the trial of Count II. This obviously came to the attention of the trial court, and, in view of the circumstances, we cannot say that it abused its discretion in refusing to grant the plaintiff a 30 to 60 day continuance to prepare for the trial of Count II. The order dismissing Count II for want of prosecution will be affirmed.

In view of our decision that the directed verdict in favor of the defendants on Count I of the complaint should be affirmed, we find it unnecessary to consider whether the trial court erred in refusing to admit into evidence plaintiffs' exhibit 9, a certified copy of a United States Department of Agriculture document stating the cost of raising a child, and in refusing to allow plaintiffs' counsel to examine the cards of prospective jurors.

For the foregoing reasons the directed verdict and judgment entered thereon as to Count I is affirmed, and the order dismissing Count II for want of prosecution is affirmed.

Affirmed.

DIERINGER and JOHNSON, JJ., concur.