JANET MARTINO, Plaintiff-Appellant, *v.* FAMILY SERVICE AGENCY OF ADAMS COUNTY *et al.*, Defendants-Appellees.

Fourth District   No. 4—82—0188

Opinion filed December 9, 1982.—Modified on denial of rehearing February 25, 1982.

WEBBER, P.J., concurring in part and dissenting in part.

Leahy and Leahy, of Springfield (Mary Lee Leahy and Andrew J. Leahy, of counsel), for appellant.

Delmer R. Mitchell and Mark A. Drummond, both of Schmiedeskamp, Robertson, House, Neu & Mitchell, of Quincy, and Cornelius Thomas Ducey, Jr., and Mark R. Osland, both of Ducey, Feder & Ducey, Ltd., of Belleville, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On November 18, 1980, plaintiff, Janet Martino, brought suit in the circuit court of Sangamon County against defendants, Family Service Agency of Adams County (Family Service) and Jane Balke. The venue was subsequently transferred to the circuit court of Adams County. On March 8, 1982, upon defendants' motion, that court entered a judgment dismissing, with prejudice, plaintiff's five-count, third amended complaint. Plaintiff appeals.

The principal issue on appeal is whether the various counts of the third amended complaint stated causes of action. Although based on different theories, the various counts had a common theme. They alleged: (1) Family Service offered family and marriage counseling services to the public; (2) on or about October 7, 1979, Family Service contracted with plaintiff to provide counseling service in an effort to improve the marital relationship between plaintiff and her husband; (3) defendant Balke, who was Family Service's chief executive officer, was assigned to counsel with plaintiff and did so between October 1, 1979, and May 1, 1980; and (4) during this period Balke (a) used against

plaintiff's interest information obtained by Balke from plaintiff during counseling, (b) revealed those confidences to others, (c) fell in love with plaintiff's spouse, pursued him, and engaged in "intimate relations" with him, and (d) after developing this conflict of interest failed to either inform plaintiff of the conflict or terminate her counseling relationship with plaintiff.

Count I, II and III were directed solely against Family Service and counts IV and V were directed solely against Balke. Count I was based upon the theory that Family Service breached a contract with plaintiff to furnish counseling services to her that would be performed with skill, care and ethics commonly exercised in the counseling profession in Quincy or similar places. Count II alleged that through the master-servant relationship, Family Service was liable for the tort of malpractice of the profession of social work. Count III maintained Family Service, acting through Balke, violated the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1979, ch. 91½, par. 801 et seq.) and the Social Workers Registration Act (Ill. Rev. Stat. 1979, ch. 111, par. 6301 et seq.). Counts IV and V charged Balke as an individual with the tort of social worker malpractice and of violations of the two aforesaid acts.

We consider first counts II and V which purport to sound in the tort of malpractice. Although count II, directed solely against Family Service, alleges it failed to provide a competent counselor and to train and guide her as well as alleging liability of Family Service under the doctrine of *respondeat superior*, plaintiff's theories are all dependent upon the counselor, Balke, having provided service in a manner constituting malpractice.

Plaintiff has failed to present any direct statutory or common law authority as precedent for applying the tort of malpractice to the social work profession. Similarly, we have been unable to discover any such precedent. Plaintiff seeks to draw analogy to the medical profession, where a breach of duty has been held to arise from a psychiatrist having intercourse with his patient as part of her prescribed therapy (*Roy v. Hartogs* (1976), 85 Misc. 2d 891, 381 N.Y.S.2d 587), a psychiatrist beating a patient (*Hammer v. Rosen* (1960), 7 N.Y.2d 376, 165 N.E.2d 756), and a hospital negligently failing to abide by licensing regulations (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253). Plaintiff points out that a code of ethics has been adopted by the National Association of Social Workers which would have been violated by the conduct of Balke alleged here. Plaintiff also maintains that breach of the social worker's code alleged here would be similar to a breach by a lawyer of codes promulgated by vari-

ous bar groups such as the American Bar Association.

Plaintiff emphasizes the loyalty and trust that should be at the heart of a relationship between a social worker and a client, likening it to a fiduciary relationship. Plaintiff cites *Suchy v. Hajicek* (1936), 364 Ill. 502, 4 N.E.2d 836, where the court stated:

"In general, a fiduciary or confidential relationship exists where trust and confidence are reposed by one person in another, who, as a result, gains an influence and superiority over the first." (364 Ill. 502, 509, 4 N.E.2d 836, 840.)

In *Steinmetz v. Kern* (1941), 375 Ill. 616, 32 N.E.2d 151, the court held that the existence of such a relationship "prohibits the one trusted from seeking or obtaining any selfish benefit for himself during the course of the relationship." (375 Ill. 616, 620, 32 N.E.2d 151, 154.) However, neither of the above cases held a breach of a fiduciary duty to be a tort.

Plaintiff also relies on the following statements:

"The therapist-patient relationship is one of great intimacy and trust, in which the therapist encourages the patient to confide in the therapist, and the therapist has a corresponding fiduciary responsibility to the patient." 20 Proof of Facts 2d 433 (1979).

"Psychiatrists, psychologists, and other mental health professions are required to exercise due skill and care in conformity with that ordinarily exercised by qualified professionals in their respective fields." 20 Proof of Facts 2d 439 (1979).

The most authoritative texts give a broad scope to the types of endeavor in which the tort of malpractice may be committed:

"Sec. 299 A. Undertaking in Profession or Trade

Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." Restatement (Second) of Torts sec. 299 A (1965).

"Beyond this the American courts have extended the tort liability for misfeasance to virtually every type of contract where defective performance may injure the promisee. An attorney or an abstractor examining a title, a physician treating a patient, a surveyor, an agent collecting a note or lending money or settling a claim, or a liability insurer defending a suit, all have been held liable in tort for their negligence. The same is true of contractors employed to build a structure, to transport people or goods,

to install a windmill or a lightning rod, or to shoot an oil well, or a beauty shop giving a permanent wave; of suppliers of chattels, and of many others." Prosser, Torts sec. 92, at 617 (4th ed. 1971).

Plaintiff also relies on the recent decision in *National Bank of South Dakota v. Leir* (1982), S.D., 325 N.W.2d 845, and cases cited therein in support of her theory. *Leir* and those other cases were decided on the issue of whether social workers employed by governmental units had sovereign immunity. However, the implication in *Leir* and some other cases was that social workers were liable for negligence in their furnishing of services for their clients.

Despite the implications of the foregoing cases, the directives of the Restatement (Second) of Torts and Prosser on Torts and the inference arising from the quoted material that the tort of malpractice is applicable to one engaged in the profession of social work, we are unwilling to recognize such a tort at least when it arises from conduct not intended to harm. No Illinois court of review has done so in the past. Although the conduct alleged here was clearly improper, determination of the propriety of conduct of social workers and the relationship it might have to injury suffered by clients generally would be most difficult to ascertain. The damages a client might receive from the improper practice of social work are unlikely to be pecuniary in nature and extremely unlikely to be physical in nature. The supreme court rejected similar arguments against upholding a right to recover for the tort of intentional infliction of severe emotional harm in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157. Nevertheless, the court then stated:

> "It has not been suggested that every emotional upset should constitute the basis of an action. Indiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts, and the law should aim to toughen the psyche of the citizen rather than pamper it. But a line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility." 22 Ill. 2d 73, 85, 174 N.E.2d 157, 164.

In the absence of Illinois precedent we find no compelling policy reason to initiate the recognition of the tort of social worker malpractice for unintended "hurts" most of which we deem likely to be "slight hurts which are the price of a complex society." We decline to do so. The trial court properly dismissed counts II and IV.

We view count I charging breach of contract in a different

light. It alleged that a contract was entered into between plaintiff and Family Service for the furnishing of counseling and that competent counseling was not provided to the damage of plaintiff. It alleged that competent counseling included (1) a duty of loyalty to the client, (2) a withdrawal by a counseling social worker if a conflict of interest developed, and (3) an avoidance of revelation to others or use by the social worker against the interests of the client of confidential information obtained during the counseling. The factual allegations set forth a breach of that promised service. We are also unaware of case precedent for such a suit in contract. However, no specific precedent is necessary to support the viability of a complaint which alleges a contract from which certain promises are implied, a breach of those implied promises and damages.

The allegations of damages require discussion. They were as follows:

"a. Plaintiff revealed highly personal and intimate information which she would otherwise not have revealed, which information was transmitted to others and was used against plaintiff's interests.

b. Plaintiff was deprived of the opportunity to have relations between herself and her husband improved.

c. Plaintiff gave up her residence in Quincy, Illinois.

d. Plaintiff gave up her employment in Quincy, Illinois.

e. Plaintiff suffered embarrassment and emotional distress.

f. Plaintiff suffered a loss of confidence in the integrity of counselors and has been deprived of the ability to obtain counseling."

Items a. and b. are proper elements of damages for breach of the implied condition of the contract alleged. The giving up of a residence or employment is not a proper element of damage particularly when no monetary loss therefrom is specifically alleged. Embarrassment, emotional distress and loss of confidence in the integrity of counselors are not proper elements of damage for breach of contract. The deprivation of the ability to have counseling, to the extent that it constitutes proper damage, is a restatement of item f.

As count I stated a contract, a breach and some proper elements of damage, the trial court erred in dismissing it.

Counts III and V, directed against Family Service and Balke, respectively, are primarily based upon allegations of violations of sections 3 and 15 of the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act), which provide in part:

"Sec. 3. (a) All records and communications shall be confiden-

tial and shall not be disclosed except as provided in this Act.

\* \* \*

Sec. 15. Any person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief. Reasonable attorney's fees and costs may be awarded to the successful plaintiff in any action under this Act." Ill. Rev. Stat. 1979, ch. 91½, pars. 803, 815.

Section 2 of the Act (Ill. Rev. Stat. 1979, ch. 91½, par. 802(1), (9)) defines "Confidential communication" or "communication" as "any communication made by a recipient \*\*\* to a therapist \*\*\* during or in connection with providing mental health \*\*\* services to a recipient." The term "Therapist" is defined to include "[a] social worker \*\*\* providing mental health \*\*\* services \*\*\*." Section 5(a) (Ill. Rev. Stat. 1979, ch. 91½, par. 805(a)) exempts certain communications from this prohibition. However, there are no allegations in this case of any such exempted communications.

Counts III and V also allege violations of section 20 of the Social Workers Registration Act (Registration Act) (Ill. Rev. Stat. 1979, ch. 111, par. 6324), which prohibits a social worker from disclosing "any information he may have acquired from persons consulting him in his professional capacity which was necessary to enable him to render services" in that capacity to those persons. Section 20 also provides for exceptions not applicable here. Interestingly, one of the exceptions permitting disclosure is in an action for "malpractice" civil or criminal against the social worker. Section 19 of the Registration Act provides for criminal penalties for violations of the Registration Act but no provision is made in the Registration Act for civil causes of action for violations.

Both counts III and V alleged that Balke revealed to others information she had gained in counseling plaintiff. Defendants maintain the services allegedly rendered here were not within the purview of the Confidentiality Act. In the case of *In re Marriage of Semmler* (1980), 90 Ill. App. 3d 649, 413 N.E.2d 502, the court held that a wife's claim of privilege under section 10(a) of the Confidentiality Act (Ill. Rev. Stat. 1979, ch. 91½, par. 810(a)) to her communications with her marital therapist was properly allowed in a marriage dissolution proceeding. This interpretation of the Confidentiality Act is consistent with the recommendations of the 1976 Report of the Governor's Commission for Revision of the Mental Health Code of Illinois chaired by the Honorable Joseph Schneider of the circuit court of Cook County. This report introduced the proposed Confidentiality Act by stating that it was intended to include all those persons entering into a therapeutic relationship

with clients. That would include marriage counseling.

■■ Balke was alleged to be a social worker. Section 20 defines social workers as therapists. *Semmler* correctly includes marriage counseling within the purview of the Confidentiality Act. Allegations of Balke's revelations of confidential communications were allegations of violations for which damages are provided under section 15.

■■ Defendants also complain that counts III and V fail to set forth what information was revealed or to whom. Such particularity is certainly highly desirable. However, in view of the lack of precedent as to the requirements for stating a cause of action under the statute, we do not hold the failure of plaintiff to make the allegation to be fatal in this case. Upon remand the trial court should require plaintiff to set forth the requested information. Defendants also maintain the counts fail to negate the exceptions to confidentiality set forth in section 5(a) of the Confidentiality Act and in section 20 of the Registration Act which also provides exceptions. The respective motions upon which the complaint was dismissed did not complain of that. Even if the exceptions are required to be negated in the complaint, defendants cannot complaint of that in this appeal. The Registration Act has no provision for civil actions. Accordingly, we hold that allegations to that act are superfluous. In any event, the breach of either act would be the same and damages under the Registration Act, or a common law action based on it, would be no broader than under the Confidentiality Act.

The allegations of damages for counts III and V were the same as for count I. Items a and b, concerning transmission of the information to others and use against plaintiff's interest, her deprivation of the opportunity to have her relations with her husband improved, and item e., concerning plaintiff's embarrassment and emotional distress are damages flowing naturally from the statutory breach charged and are properly pleaded. Items c and d concerning plaintiff's abandonment of her home and job do not naturally flow from the revelation of the information and are not alleged with enough specificity to show a proper connection to the statutory breach. The same is true of item f.

■■■ Defendants object to all of the allegations of damages on the basis that the gist of the action here is for alienation of affections. Accordingly, they argue the measure of damages should be limited to "actual damages sustained as a result of the injury complained of" (Ill. Rev. Stat. 1979, ch. 40, par. 1902) and should not include various types of emotional injury (Ill. Rev. Stat. 1979, ch. 40, par. 1904). As to those counts permitted to stand, we do not agree that the action is similar to one for alienation of affections. We are not permitting plaintiff recovery for the loss of her husband's affections because Balke wooed him

away from her. We are permitting recovery for the loss of effective social work arising from a breach of contract to provide those services and from a breach of statutory duty to withhold confidential information.

We affirm the judgment of the trial court as to the dismissal of counts II and IV. We reverse the judgment as to the dismissal of counts I, III and V and remand for further proceedings.

*Affirmed in part; reversed in part and remanded.*

LEWIS, J., concurs.

PRESIDING JUSTICE WEBBER, concurring in part and dissenting:

I concur in the dismissal of counts II and IV, the malpractice counts, but I dissent from the reinstatement of counts I, III and V.

As to count I, breach of contract: I find a close analogy in the prior authorities in which a plaintiff sought damages for malpractice against a physician based on (1) negligence and (2) breach of contract. An appropriate summary is contained in *Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 65, 305 N.E.2d 571, 573:

> "Our research indicates that heretofore no court of review in Illinois has been required to consider whether an action based upon the contract of a physician to effect a particular cure will lie, although it appears that such an action has been recognized in other jurisdictions. [Citations.] These jurisdictions have insisted that the contract be set forth explicitly in the complaint, proved by clear and convincing evidence and supported by some consideration separate from the plaintiff's agreement to pay the physician for his services. [Citation.] After reviewing these authorities we are inclined to agree with our statement in *Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 191 N.E.2d 436, that if the Illinois courts would consider enforceable such a warranty by a physician, it would be necessary to allege and prove the making of the warranty, the plaintiff's reliance thereon and a separate consideration."

In *Gault*, cited in *Rogala* above, the court quoted at length from an article entitled "The Contractual Liability of Physicians and Surgeons' by Arnold J. Miller in Wash. U.L.Q. 413 (1953), a portion of which states:

> " 'There are compelling arguments, then, as outlined in the foregoing, that a strong public policy permeates all aspects of

any contractual arrangement between physician and patients and operates to lift it out of the field of discourse of ordinary commercial contracts. It operates to prevent the physician from escaping his responsibilities to the society he serves, and should operate, it is here contended, to protect the physician in the pursuit of his healing art against strict liability for the consequences of unguarded utterances and from the fertile imaginations of the fraudulently minded.' " *Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 109, 191 N.E.2d 436, 443.

Admittedly the defendant Family Service Agency against which the contract count is directed is not a physician, but in my judgment the rationale is the same. Family Service provides services in the mental health field; it is staffed by persons who have had professional training; it is not a farmer selling carrots in the common market; and hence any contracts which it might make are "out of the field of discourse of ordinary commercial contracts." (*Gault.*) The allegations in count I of the third amended complaint tell us about this contract only this:

"On or about October 7, 1979, Plaintiff and Defendant, Family Service Agency, entered into an agreement whereby Defendant would provide counseling services in an effort to improve the marital relationship between Plaintiff and her husband and Plaintiff would pay fees for such services pursuant to the Defendant's fee schedule. The agreement was oral."

This fails the tests mandated in *Rogala*; the contract is not explicitly set forth and there is no allegation of a separate consideration. We have only the bare-bones allegation of an oral contract, and under the circumstances of such a special contract it is not sufficient to say that further information might be developed by discovery.

By remanding for trial on this "contract" the majority has accomplished a severe degringolade on the law of professional agreements.

As to counts III and V, violation of the Confidentiality Act: I agree that the statute creates a cause of action, but I cannot agree that the damages have been sufficiently pleaded. The majority states, "The damages a client might receive from the improper practice of social work are unlikely to be pecuniary in nature and extremely unlikely to be physical in nature." I agree and further conclude that the damages must therefore be pleaded with great specificity. The cause of action was unknown at common law and therefore a general and traditional allegation of damage is entirely insufficient. Plaintiff had four opportunities to rectify this omission and failed each time.

I would affirm the trial court's order in its entirety.