LAND OF LINCOLN SAVINGS AND LOAN, Plaintiff-Appellee, *v.*
MICHIGAN AVENUE NATIONAL BANK OF CHICAGO, Trustee, *et al.*,
Defendants-Appellants.

Third District    Nos. 81-435, 81-276 cons.

Opinion filed February 26, 1982.—Rehearing denied March 23, 1982.

Joseph M. Laraia, of Laraia and Kilander, Ltd., of Wheaton, and Harold I. Levine, Ltd., of Chicago, for appellants.

Clarence K. Graves, of Graves & Lohrentz, of Elmhurst, and Jeffrey M. Weston and Mary Ellen Rosemeyer, both of Friedman, Weston, Sternberg & Rakich, of Chicago, for appellee.

JUSTICE ALLOY delivered the opinion of the court:

Individual defendants Joseph M. Laraia, Ronald Berns, and Vincent A. Solano, Jr., appeal from a portion of the summary judgment order against them in this mortgage foreclosure action by Land of Lincoln Savings and Loan (hereinafter Land of Lincoln). Land of Lincoln had filed a mortgage foreclosure complaint, requesting sale of the real property and a deficiency judgment against the individual defendants. They answered, denying any default on the loan and challenging the complaint as insufficient to support a deficiency award against them. Land of Lincoln thereafter filed its motion for summary judgment, supported by exhibits and affidavits, which was opposed by the defendants, who submitted affidavits in opposition. After hearing, the court

entered summary judgment for Land of Lincoln. A sale of the real property was ordered and the defendants were found personally liable for any deficiency which might result from the sale. The property was sold, and a deficiency of $42,776.18 resulted. A deficiency judgment in that amount was entered against the individual defendants Laraia, Berns, and Solano. The defendants now appeal from the entry of the deficiency judgment and raise numerous issues. They argue (1) that there were questions of fact raised concerning an extension of the date for payment of the loan, and that, therefore, the finding of default, which was a basis for the deficiency judgment, was in error. While not challenging the default finding as it affects the foreclosure and sale, they do challenge it, and assign it as error, as it affects the deficiency judgment. They raise other issues as to (2) whether they were guarantors on the note, rather than comakers, as the trial court found, and whether the deficiency judgment was proper. They also raise issues on the pleadings, including (3) whether the complaint properly pleaded the mortgage and note so as to support the deficiency judgment, and (4) whether there was proper pleading of the assignment of the note and mortgage to Land of Lincoln.

The record reveals that the original mortgage loan on this real property, located in the village of Bolingbrook, was taken out in July 1975. The original mortgage agreement was between Michigan Avenue National Bank of Chicago, as trustee under a land trust, and American Home Savings and Loan Association. By reason of a 1978 merger, Land of Lincoln is the successor of American Home Savings and Loan. The original mortgage agreement specified a principal of $280,000, due and payable on August 1, 1977, with monthly interest payments until that time. By loan modification agreement, the loan was extended to March 1, 1978. Prior to that time, and during the period of extension, two acres of the original property were sold and the proceeds applied to the loan, reducing the principal balance due to $170,000.

On March 1, 1978, another note and mortgage agreement were executed covering the subject real estate. The document was a standard form land trustee's note, secured by mortgage. The note was for a principal sum of $170,000, to be due and payable on May 31, 1979. Two installment interest payments, of $8,500 each, were provided for in the agreements, to be payable on November 1, 1978, and on May 1, 1979. The mortgagee was American Home Savings and Loan, predecessor to Land of Lincoln, and the mortgagor was Michigan Avenue National Bank of Chicago, as trustee under a trust agreement with the individual defendants as beneficiaries. In addition to execution by Michigan Avenue Bank, as trustee, the promissory note contained the following provision, typed onto the standard form below the officer for the trustee's signature:

"For value received, the undersigned personally and individually acknowledge herewith the receipt of the principal sum of One Hundred Seventy Thousand ($170,000.00) paid to them as evidenced by the within Note appearing on the reverse side and that they herewith agree and promise to pay to American Home Savings and Loan Association and according to the terms and conditions set forth on the within note and, in the event of the default in the payment of any set terms of said note, that they shall be individually and personally liable, both jointly and severally, and that all rights accruing in a personal obligation may be involked [*sic*] against them."

The individual defendants had executed the note under this provision, as "the undersigned."

The note contains no provision with respect to any conditions precedent or subsequent which would affect or alter the due dates for payment set forth in the note. The defendants, in their pleadings and affidavits, sought to establish that the original agreement between the parties was that the loan would be extended for a one-year period, until May 31, 1980, if the defendants were unable to sell the property before May 31, 1979, the due date set forth in the note and references in the mortgage agreement.

Prior to, and at the time of the March 1, 1978, execution of the note and mortgage herein at issue, the defendants were attempting to obtain a rezoning of the property from commercial to multiple family residence zoning. The affidavits of defendants Laraia and Solano, attached to defendants' response to motion for summary judgment, indicate that the change in zoning was suggested by plaintiff Land of Lincoln's loan officer, Livio Valli. The affidavits of the defendants also state that prior to and at the time of the execution of the note and mortgage the same Livio Valli had agreed that if they were unable to sell the property before May 31, 1979, the due date, that he would extend the loan for an additional year. It is the position of the defense that the mortgage and note were executed based upon that parol agreement with respect to extension. As noted previously, the note and mortgage themselves are silent as to any such provision, clearly and unambiguously providing for a due date of May 31, 1979.

The affidavits of the defendants indicate as well that the extension agreement was repeated and reaffirmed subsequent to the execution of the note and mortgage on several occasions. It is asserted in the affidavits that the defendants obtained a change in zoning, from commercial to single family, for the property, and in doing so were relying upon the representations of Livio Valli with respect to any extension of the note.

The first installment of interest on the note became due and payable

on November 1, 1978. It was paid on December 7, 1978. Defense affidavits indicate that sometime prior to December 4, 1978, the parties reiterated the loan extension provision, in the event no sale was accomplished by stated due date of May 31, 1979.

After that due date had passed, in June 1979, the defendants offered Land of Lincoln the second installment of interest, under the note, and requested that extension documents be executed by the parties to show an extension of one year. Land of Lincoln's officer Livio Valli advised the defendants at that time that there would be no extension of the note, despite the tender of interest. The defendants then refused to tender the second installment until an extension agreement was executed, as had been agreed upon between the parties. Land of Lincoln thereafter filed the instant foreclosure complaint. The short form complaint filed by Land of Lincoln followed the form set forth in section 7(2) of the Illinois Mortgage and Foreclosure Act (Ill. Rev. Stat. 1979, ch. 95, par. 23.6). The complaint alleged that Land of Lincoln was the successor to American Home Savings and Loan, and it alleged the existence and execution of the note and mortgage. The mortgage was fully described in the body of the complaint and both the mortgage and the note were attached to the complaint as exhibits. As provided in the statute, Land of Lincoln sought a foreclosure on the mortgage and a personal deficiency decree against the named individual defendants, who were alleged to be personally liable for such deficiency.

The defense position, in their answer and during summary judgment proceedings, was that the defendants had signed the note as guarantors and that no deficiency could be obtained against them, as guarantors, based upon the single-count foreclosure complaint filed by Land of Lincoln. The defendants further argued on the summary judgment question that there were issues of fact presented concerning the default, specifically whether the note had been extended for one year, as per the agreements set out in their affidavits. They asserted that the plaintiff was estopped from enforcing the due date set forth, having agreed to an extension. The defense also challenged the pleadings, arguing that the complaint did not properly establish the assignment of the note and mortgage to Land of Lincoln.

The circuit court reviewed the entire record and heard the arguments of counsel on the summary judgment motion. Thereafter, it entered its order, granting the foreclosure, therein finding that the defendants had signed the note as comakers. Based on that finding, the court entered summary judgment against them for any deficiency which might result after sale of the real estate. The property was thereafter sold, and the amount realized was $189,000. The deficiency judgment later entered against the defendants was in the amount of $42,776.18. The defendants

appeal from that portion of the court's orders which granted a deficiency judgment against them. To the issues raised on appeal we now turn.

■■ The first issue raised by the defendants is whether there was a genuine issue of fact on the question of default, specifically, whether the evidence in the record indicated that the parties agreed to an extension of the note until May 31, 1980. The defendants argue there was a question of fact as to whether any default had occurred and they assert that summary judgment was therefore improper. Plaintiff Land of Lincoln, while maintaining that no issue of fact existed, initially argues that the issue of default has been waived by the defendants' failure to appeal from the foreclosure portion of the judgment. We find no waiver. The defendants are entitled to appeal from the judgment against them or any part of the judgment. (Ill. Rev. Stat. 1979, ch. 110A, par. 303(c)(2).) In this case, the notices of appeal filed by them sought to appeal from that portion of the judgment which provided for a deficiency award against the defendants. No appeal was taken from the order of foreclosure and sale. The defendants specifically note in their brief that they are not contesting the foreclosure and sale of the property, only the deficiency judgments. In seeking to reverse the deficiency award, the defendants are permitted to advance any argument in support thereof which was made to the trial court and which finds a basis in the record. In this case, one of the arguments presented to the trial court throughout the proceedings was that there was no default on the note, as a result of the existence of the alleged extension agreement. That argument has been properly preserved for this appeal. That the argument was advanced in the trial court to prevent both the foreclosure and any deficiency award does not prohibit its use, solely as to the deficiency, merely because no appeal has been taken from the foreclosure. We perceive no practical difficulty if we reverse the deficiency judgment, based upon the issue of default. Should the trial court rule, upon remandment, that no default occurred, such finding would address only the question of the deficiency award, and it could in no way affect the foreclosure and sale. Matters as to the foreclosure and sale have been conclusively determined and settled, the defendants having taken no appeal within the time prescribed. We find that the defendants are permitted to advance any argument made to the trial court as a basis for reversing the deficiency judgment, from which they appeal. They have not waived the issue with respect to their default on the note and mortgage.

The defendants' default argument is that there was a genuine issue of fact concerning whether Land of Lincoln had agreed to an extension of the loan from May 31, 1979, as stated in the note, to May 31, 1980, as alleged by the defendants to have been orally agreed to by Livio Valli. The defendants assert that the written note does not reflect the agreement

of the parties at the time of execution and that their affidavits show that the true agreement was for an extension of the note for one year past the date stated on the face of the note. They further argue that there was also a subsequent modification of the note, extending it for the one-year period.

It is well established that in ruling on summary judgment motions the court must construe the pleadings, depositions and affidavits included in the record most strictly against the moving party and most liberally in favor of the opponent. (*Cimino v. Dill* (1980), 92 Ill. App. 3d 345, 415 N.E.2d 1272; Ill. Rev. Stat. 1979, ch. 110, par. 57(3).) In examining the record and specifically the defendants' pleadings and affidavits, it is clear that there is considerable factual support for their claim that the original March 1, 1978, agreement between the parties was that the note would be extended beyond May 31, 1979, in the event the property was not sold by that time. The problem arises, however, due to the parol nature of that evidence. As noted, the note itself is unambiguous in its statement of the due date and contains no provision with respect to an extension. Under the circumstances, the parol evidence rule operates to prevent consideration of the evidence indicating an extension agreed to at the time the note was executed.

■■ It is established under the parol evidence rule that evidence of prior or contemporaneous oral agreements is not admissible to vary or contradict the terms of a writing, otherwise unambiguous on its face. (*Main Bank v. Baker* (1980), 88 Ill. App. 3d 28, 33-34, 410 N.E.2d 681; Ill. Ann. Stat., ch. 26, par. 3—119, Uniform Commercial Code Comment 1, at 85, Illinois Code Comment 1, at 84 (Smith-Hurd, 1963).) It has also been noted that the parol evidence rule is not a rule of evidence, but rather a rule of substantive contract law. (*Bank of Naperville v. Holz* (1980), 86 Ill. App. 3d 533, 537, 407 N.E.2d 1102.) Parol evidence of prior or contemporaneous agreements is admissible, however, in certain circumstances, those being where a party alleges that there was mutual mistake, conditional delivery, a lack of consideration or fraud. (*Davis v. Buchholz* (1981), 101 Ill. App. 3d 388, 428 N.E.2d 198; *Main Bank v. Baker* (1980), 88 Ill. App. 3d 28, 33-34, 410 N.E.2d 681.) These are recognized exceptions to the parol evidence rule barring extrinsic evidence of the parties' intentions at the time of execution. In the instant case, the defendants' affidavits and pleadings contain statements asserting prior and contemporaneous oral agreements with respect to the due date on the note executed March 1, 1978. The defense is asserting that the agreement as embodied in the note and mortgage is not the agreement of the parties, but that the agreement was that an extension would be granted if the defendants were unable to sell the property. Thus, the defendants are seeking to vary the unambiguous terms of the agreement through evidence of prior and contempora-

neous oral agreements. This, the parol evidence rule does not permit. Further, there was no evidence brought forth indicating fraud, lack of consideration, conditional delivery or mutual mistake, nor were these affirmative defenses raised in the defense answer. The evidence of oral agreements at the time of the execution of the note and mortgage was properly not considered by the court in addressing the summary judgment motion by Land of Lincoln. Those agreements were merged in the written agreement of the parties, which expressed their intentions as of the date it was executed.

■■ Evidence of a subsequent modification of an agreement, rather than evidence of prior or contemporaneous parol agreements, stands on a different basis. In the instant case, the defendants also assert that there was a subsequent modification of the agreement and that the modification was that the due date would be extended for a one-year period, if the property were not sold by May 31, 1979. Alternatively, they argue that there was a subsequent ratification of the contemporaneous oral agreement to extend. In their affidavits opposing the summary judgment motion, the individual defendants stated that they pursued and obtained the rezoning on the property in reliance upon the subsequent modification of the due date. They also state that the extension agreement was reiterated subsequent to the execution of the written documents. While there is some question, on the record, whether there was a subsequent modification or merely a subsequent recitation of the agreement reached at the time of execution, we must at this stage liberally construe the record in favor of the defendants when assessing the propriety of summary judgment action against them. When such construction is utilized, we find the record sufficient to raise a question of fact as to whether the parties did agree to a modification of the due date subsequent to the execution of the written agreements. The substance of the modification, as alleged in the pleadings and stated in the affidavits, was that the loan would be extended for a one-year period if the defendants could not sell the property. We would note, in this regard, that in two affidavits in the record, Livio Valli, the officer alleged to have entered into the subsequent modification agreement, has not denied that there was a subsequent agreement to extend.

■■■ The court was not prevented from considering the evidence of a subsequent modification by the parol evidence rule, for, as noted, the rule is applied to prior or contemporaneous parol evidence which would tend to alter or contradict the unambiguous terms of a written document. Parol evidence is admissible to establish a subsequent modification of a contract, and this rule has been applied to notes as well as other written contracts. (*Pierce v. Hasbrouck* (1868), 49 Ill. 23; *Kubinski & Sons, Inc. v. Dockside Development Corp.* (1975), 33 Ill. App. 3d 1015, 1022, 339

N.E.2d 529; 12 Am. Jur. 2d *Bills and Notes* §1245 (2d ed. 1964).) A previous rule of law, barring oral evidence of a subsequent modification of a written contract, had application to contracts under seal. The use of seals on written contracts was abolished in 1951 in Illinois (Ill. Rev. Stat. 1979, ch. 30, par. 153b), and the rules of construction applied to other written contracts were adopted for contracts under seal as well. Plaintiff Land of Lincoln argues that if even parol evidence is admissible to establish a subsequent modification, any such modification must be shown to have been supported by consideration and to have been for a definite time period. (*Theodosakis v. Austin Bank* (1981), 93 Ill. App. 3d 634, 639, 417 N.E.2d 806.) Plaintiffs argue that the record shows neither requirement. We disagree. The defense affidavits make it clear that the extension was to be for one year, and this is admitted in Livio Valli's second affidavit. As to the requirement of consideration, the defendants state that they proceeded with the rezoning in reliance upon the extension agreement. These statements, again giving the defense the benefit of a liberal construction, indicate that the defendants changed their position, with a definite and allegedly detrimental effect on the legal status of the property, as a result of, and in reliance upon, plaintiff officer's agreement to modify the due date on the loan and extend it for a one-year period. Such a change in position to their detriment, with its modification of the legal status and thereby their legal rights concerning the property, is sufficient consideration. A change in position to one's detriment, or a modification of a legal relation or status, bargained for or given in exchange for a promise, is consideration. (*McAdams v. Scullin* (1977), 53 Ill. App. 3d 374, 378-79, 368 N.E.2d 1036.) It is true that at this stage the record does not explicitly establish that the change in zoning was the bargained for consideration supporting the extension agreement. Such is, however, a permissible inference from the pleadings and affidavits and one which must be indulged in when considering the summary judgment motion against the defendants. Of course, no determination can be made of the ultimate result of this defense, for that depends upon the further factual development that will come after remandment. The court erred in entering summary judgment on any deficiency owed by defendants, for a genuine issue of material fact existed on the question of whether there was a default in the note and mortgage. The court erred in concluding, on the basis of the record, that there was a default. The parties ought to have been permitted to proceed to trial and to produce the evidence as to any subsequent modification. We reverse the deficiency judgment entered against the individual defendants and remand for further proceedings. In the interests of judicial economy, we will nevertheless address the other issues raised by defendants, as they remain and will not be obviated by our remand.

■■ The defendants assert that the court erred in concluding that they were comakers on the note and thereby liable for a deficiency judgment under its terms. They cite the following provision of the note in support thereof:

> "This note is executed by the undersigned, not personally but as Trustee as aforesaid in the exercise of the power and authority conferred upon and vested in it as such Trustee, and is payable only out of the property specifically described in said Mortgage securing the payment hereof, by the enforcement of the provisions contained in said Mortgage. No personal liability shall be asserted or be enforcible against the undersigned or any person interested beneficially or otherwise in said property specifically described in said Mortgage given to secure the payment hereof, or in the property or funds at any time subject to said trust agreement, because or in respect of this note or the making, issue or transfer thereof, all such liability, if any, being expressly waived by each taker and holder hereof, but nothing herein contained shall modify or discharge the personal liability expressly assumed by the guarantor hereof, if any, and each original and successive holder of this note accepts the same upon the express condition that no duty shall rest upon the undersigned to sequester the rents, issues and profits arising from the property described in said Mortgage, or the proceeds arising from the sale or other disposition thereof, but that in case of default in the payment of this note or of any installment hereof, the sole remedy of the holder hereof shall be by foreclosure of the said Mortgage given to secure the indebtedness evidenced by this note, in accordance with the terms and provisions in said Mortgage set forth or by action to enforce the personal liability of the guarantor, if any, of the payment hereof, or both."

The argument is that this provision prevents any personal liability for default from arising as to the defendants, as comakers. They argue that only foreclosure is possible as against the makers, and that a deficiency must be obtained from the guarantors only. The argument is not sound when the whole agreement is examined. The above provision refers only to the corporate trustee, as maker. The corporate trustee is the undersigned referred to in that clause. The defendants' individual liability as makers is clearly stated in the typed-in provision on the note added below the signature of the corporate trustee's officer. The added provision states:

> "For value received, the undersigned personally and individually acknowledge herewith the receipt of the principal sum of One Hundred Seventy Thousand ($170,000.00) paid to them as evidenced by the within Note appearing on the reverse side and that

they herewith agree and promise to pay to American Home Savings and Loan Association and according to the terms and conditions set forth on the within note *and, in the event of the default in the payment of any set terms of said note, that they shall be individually and personally liable, both jointly and severally, and that all rights accruing in a personal obligation may be involked [sic] against them.*" (Emphasis added.)

It is clear that the court correctly found, on the basis of this added provision, that the undersigned individual defendants executed the note as comakers and agreed to be personally liable as such, in the event of default. We find no conflict between this provision and the previous one, as the latter has reference to the corporate trustee and a holder's remedies as against the trustee. Even if some ambiguity could be claimed, the typewritten provision in the form note would control the printed term. (Ill. Rev. Stat. 1979, ch. 26, par. 3—118(b).) The individual defendants signed as comakers and were liable for any deficiency in the event of default.

■■ Two other issues raised by the defendants need to be addressed, and both go towards their challenge to the pleadings. The defense argues that the plaintiff's complaint fails to incorporate the note and mortgage by reference and, therefore, the complaint is inadequate to support the deficiency judgment. The complaint, we note, follows exactly the statutory short form complaint set out in the foreclosure provisions. (Ill. Rev. Stat. 1979, ch. 95, par. 23.6.) The note and mortgage are referred to in the complaint and attached to it as exhibits. Section 7.2 of the Mortgage and Foreclosure Act (Ill. Rev. Stat. 1979, ch. 95, par. 23.6—2) states in pertinent part:

"The statements contained in a short form complaint shall, by virtue of this Act, be deemed and construed to include allegations as follows: * * * ; that the exhibits attached are true and correct copies of the mortgage and notes and are incorporated and made a part of the complaint by express reference; * * *."

As a perusal of the statute would have indicated, there was no deficiency in the incorporation of the note and mortgage into the complaint.

■■ The defendant also asserts that the complaint failed to allege the assignment of the note from American Home Savings and Loan Association to Land of Lincoln. While it is true that the complaint did not allege any assignment, for there was no assignment, the complaint did allege that Land of Lincoln was the successor to American Home Savings and Loan Association, stating specifically that the latter is "now known" as Land of Lincoln. Furthermore, the record at summary judgment contains a certificate of merger between American Home Savings and Loan and

Land of Lincoln. By statutory provision, as a result of the merger, "all of the rights, franchises, and interests of each of the merging associations in and to every kind of property, real, personal or mixed, shall vest automatically in the continuing association, without any deed or other transfer." (Ill. Rev. Stat. 1979, ch. 32, par. 819(b).) The pleading was not deficient for failure to allege an assignment of the note.

In summary, we find that the pleadings were sufficient and that the court correctly determined that the individual defendants were makers. We find, however, that the court erred in entering summary judgment for the deficiency for the reason that a genuine question of fact existed with respect to whether there was a default on the note by the failure to pay the principal on May 31, 1979. The deficiency judgment against the individual defendants is reversed on that basis, and the cause remanded for further proceedings. It is again noted that this reversal does not affect in any way the foreclosure decree and subsequent sale of the property thereunder. The reversal is of the deficiency judgment entered only, and the remandment will be for the purpose of a hearing to determine whether there was a subsequent modification of the agreement as to its due date, and thereby, whether defendants were in default at the time of the foreclosure action.

Reversed and remanded with directions.

BARRY, P. J., and SCOTT, J., concur.