GREGORY JOHNSON, Plaintiff-Appellant, v. LINCOLN CHRISTIAN COLLEGE *et al.*, Defendants-Appellees.

Fourth District   No. 4—86—0305

Opinion filed December 16, 1986.

734

James A. McKenna and Melinda S. Levine, both of Jenner & Block, of Chicago, and National Gay Rights Advocates, of San Francisco, California, for appellant.

William B. Bates, of Woods & Bates, of Lincoln, and Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield (William S. Hanley, Stephen R. Kaufmann, and Alan R. Post, of counsel), for appellee Lincoln Christian College.

James E. Souk, of Dobrovolny & Souk, of Urbana, for appellee Kent Paris.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

Gregory Johnson filed suit against Lincoln Christian College (LCC) and Kent Paris, and both defendants filed motions to dismiss his complaint. These motions were allowed. Johnson appeals from the dismissal of his complaint.

■ When considering a motion to dismiss, a court is obligated to accept as true all well-pleaded facts and all reasonable inferences which could be drawn from those facts. (*Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 134, 390 N.E.2d 72, 77.) Pursuant to section 2—612(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—612(b)), "[n]o pleading is bad in substance which contains such

information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." Pursuant to section 2—603(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(c)), "[p]leadings shall be liberally construed with a view to doing substantial justice between the parties." Furthermore, as this court stated in *Champaign National Bank v. Illinois Power Co.* (1984), 125 Ill. App. 3d 424, 428-29, 465 N.E.2d 1016, 1019, "[i]f the facts alleged and any reasonable inferences capable of being drawn from those facts demonstrate a possibility of recovery, the pleading is not subject to dismissal." Consequently, our focus on review is whether any of the counts of Johnson's complaint "demonstrate a possibility of recovery," and, for the purpose of this appeal, we deem the following well-pleaded facts to be correct.

Johnson was a student at Lincoln Christian College from September 1976 to March 1981. He was enrolled in a five-year program to prepare him for a career teaching sacred music. Johnson has completed all of his course requirements and fully paid his tuition for each year; however, LCC has repeatedly refused to grant Johnson his diploma. LCC based its denial on a charge that Johnson might be homosexual.

The charge of homosexuality arose when, during Johnson's last semester at LCC, another student, Linda Heppner, told LCC's dean of students, Thomas Ewald, that Johnson might be homosexual. Solely in response to that student's accusation and without further investigation, LCC through Heppner, told Johnson that he would graduate only if he sought counseling from Kent Paris. Relying upon LCC's assurances that he would graduate if he sought counseling, and afraid that he would not graduate unless he complied with LCC's demand, Johnson repeatedly traveled between Lincoln and Champaign, where Paris' office was located, and attended private counseling sessions.

Throughout these counseling sessions, Johnson believed that anything he said, and any of Paris' resulting conclusions, would be held in confidence. Because he believed that the conversations were confidential, Johnson was willing to, and did, reveal many personal facts, some of which he had never told anyone else. He would not have given that information to Paris if he had suspected that Paris would discuss the information or his resulting conclusions with anyone else. Johnson never consented to the disclosure of any information about these counseling sessions, and Paris never in any way contradicted Johnson's faith in the confidentiality of their discussions; however, Paris reported to Ewald in March of 1981 that plaintiff had not changed and was not progressing.

As a result of that conversation, Ewald informed plaintiff that

LCC would hold a hearing in less than 24 hours at which Johnson would be required to defend himself against the rumor that he was homosexual. Ewald told Johnson that he would be dismissed from LCC because of his alleged homosexuality and that the reason for his dismissal would be stamped across his transcript. From that meeting, Johnson understood that he would be dismissed regardless of what happened at the hearing. Afraid that the accusation of homosexuality being imprinted on his transcript would destroy his career goal, Johnson withdrew from LCC. LCC held the threatened hearing in Johnson's absence. In addition, Ewald called Johnson's mother and told her that LCC was dismissing Johnson because he was homosexual. To this day, LCC refuses to grant plaintiff a diploma.

On November 29, 1984, Johnson filed a seven-count complaint against LCC and Paris in the circuit court of Champaign County. LCC filed a motion to transfer venue from Champaign County to Logan County, and Paris filed an affidavit in support of LCC's motion to transfer venue. On February 7, 1985, LCC's motion was allowed, and on May 7, 1985, an order to transfer venue to Logan County was filed in the circuit court of Champaign County.

Johnson's suit against Paris and LCC is based on several theories. With respect to LCC, plaintiff alleges: (1) LCC breached its college-student contract with plaintiff by arbitrarily and in bad faith denying him his diploma (count I); (2) LCC tortiously interfered with plaintiff's contract with Paris (count II); (3) LCC misused the confidential information that Paris divulged thereby violating the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1985, ch. 91½, par. 801 *et seq.*) (count III); and (4) LCC invaded plaintiff's privacy by publicly accusing him of homosexuality (count IV). With respect to Paris, plaintiff alleges: (1) Paris breached a contract with Johnson and violated the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1985, ch. 91½, par. 801 *et seq.*) by disclosing information about his counseling sessions with plaintiff (count V); (2) Paris' disclosure of the confidential information tortiously interfered with plaintiff's college-student contract with LCC (count VI); and (3) Paris invaded plaintiff's privacy by disclosing confidential information (count VII).

Defendants filed seven separate motions to dismiss Johnson's complaint. Johnson filed a consolidated memorandum in opposition to defendants' motions to dismiss his complaint. On August 20, 1985, a hearing was conducted regarding the various motions to dismiss. On April 9, 1986 (nearly 8 months after the hearing), the circuit court issued a one-sentence ruling, stating that "[a]ll motions of the co-

defendants heretofore heard in open Court and considered by the Court are allowed."

In count I of his complaint, Johnson alleged that (1) the terms of a college-student contract are implied by law; (2) the law implies in every college-student contract a duty that the college not arbitrarily, capriciously, or in bad faith prevent a student from graduating; (3) he fulfilled all of LCC's academic requirements and fully paid his tuition to LCC; and (4) by refusing to issue him a diploma, LCC breached its implied contract with Johnson and has acted arbitrarily, capriciously, and in bad faith by refusing to do so. Johnson also alleged that LCC told him he would be allowed to graduate if he sought professional help from Paris.

■ LCC argues that dismissal of count I was proper because count I failed to allege the terms of the contract between Johnson and LCC. LCC cites *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634, *DeMarco v. University of Health Sciences/The Chicago Medical School* (1976), 40 Ill. App. 3d 474, 352 N.E.2d 356, *Abrams v. Illinois College of Podiatric Medicine* (1979), 77 Ill. App. 3d 471, 395 N.E.2d 1061, and *Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 937, 445 N.E.2d 901, 906, all cases which involve contracts between a school and a student, and notes that in each of these cases, the student presented catalogues, bulletins, or other such material distributed by the school to establish the elements of the contract between the student and the school. Based on these cases, LCC argues that Johnson is obligated to provide some type of document to establish the elements of the contract between him and LCC. LCC's argument based on these cases is without merit. These cases simply stand for the proposition that documents distributed by a school are a *part* of the contract between the student and the school. It does not necessarily follow, nor do any of the cases cited by LCC require, that a student must present such documents to establish the terms of an implied contract between the school and the student.

LCC also cites *McErlean v. Union National Bank* (1980), 90 Ill. App. 3d 1141, 414 N.E.2d 128, for the proposition that the allegations contained in count I of Johnson's complaint are "conclusory statements [which] are insufficient to adequately plead breach of contract absent supporting facts concerning the material terms of the contract." *McErlean* is a commercial case involving a partially oral and partially written contract to loan money in the future. There, the court stated that "[n]o allegations are expressly pleaded, nor can any be implied, in the instant complaint as to the material terms [of the

contract] *** particularly, interest, duration and terms of repayment. In light of these significant omissions, we find no error in the dismissal of the amended complaint ***." 90 Ill. App. 3d 1141, 1147, 414 N.E.2d 128, 133.

We believe that there is a valid distinction between a "commercial case" and a case involving an implied contract between a college and a student. In a commercial case such as *McErlean*, the material terms of an alleged contract are generally complex and unique to a particular set of circumstances and cannot be implied. On the other hand, the traditional implied contract between a college and a student is much more standard and less complex than that which usually exists in a commercial setting.

The elements of a traditional contract are present in the implied contract between a college and a student attending that college and are readily discernible. The student's tender of an application constitutes an offer to apply to the college. By "accepting" an applicant to be a student at the college, the college accepts the applicant's offer. Thereafter, the student pays tuition (which obviously constitutes sufficient consideration), attends classes, completes course work, and takes tests. The school provides the student with facilities and instruction, and upon satisfactory completion of the school's academic requirements (which constitutes performance), the school becomes obligated to issue the student a diploma. As this court stated in *Tanner v. Board of Trustees of University of Illinois* (1977), 48 Ill. App. 3d 680, 682-83, 363 N.E.2d 208, 209-10, a college "may not act maliciously or in bad faith by arbitrarily and capriciously refusing to award a degree to a student who fulfills its degree requirements."

■ LCC is well aware of what its own academic requirements are, and we fail to see how LCC can be surprised or prejudiced by the fact that Johnson does not allege these requirements with more specificity. Johnson alleged that he has met all of the academic requirements imposed by LCC in order to obtain a diploma, and if this allegation is not true, LCC should be easily able to present evidence to disprove Johnson's allegation in this regard. LCC was reasonably informed of the nature of the claim which it was called upon to meet, and pursuant to section 2—612(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—612(b)), this count could not properly be dismissed. Consequently, we conclude that count I of Johnson's complaint states a valid cause of action for breach of an implied contract between Johnson and LCC, and the trial court erred in dismissing count I of the complaint.

In count V of his complaint, Johnson alleged that Paris violated

sections 2, 3, and 5 of the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (Ill. Rev. Stat. 1985, ch. 91½, pars. 802, 803, 805) and also breached an implied-by-law contract by divulging confidential information disclosed to him by Johnson during private counseling sessions to LCC without Johnson's consent.

Section 3(a) of the Confidentiality Act provides that "[a]ll records and communications shall be confidential and shall not be disclosed except as provided in this Act." (Ill. Rev. Stat. 1985, ch. 91½, par. 803(a).) Section 5 of the Confidentiality Act provides that if a "recipient *** is 18 years or older," records and "communications" may only be disclosed with his written consent. (Ill. Rev. Stat. 1985, ch. 91½, pars. 805(a)(3), (b).) The following definitions, which are contained in section 2 of the Confidentiality Act, are also pertinent to our analysis of count V of Johnson's complaint:

"(1) 'Confidential communication' or 'communication' means any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient.
***

(3) 'Mental health or developmental disabilities services' or 'services' includes but is not limited to examination, diagnosis, evaluation, treatment, training, pharmaceuticals, aftercare, habilitation or rehabilitation.
* * *

(6) 'Recipient' means a person who is receiving or has received mental health or developmental disabilities services.
* * *

(9) 'Therapist' means a psychiatrist, physician, psychologist, social worker, or nurse providing mental health or developmental disabilities services or any other person not prohibited by law from providing such services or from holding himself out as a therapist if the recipient reasonably believes that such person is permitted to do so." Ill. Rev. Stat. 1985, ch. 91½, pars. 802(1), (3), (6), (9).

In response to Johnson's allegation that he breached the Confidentiality Act, Paris filed a motion to dismiss count V of the complaint because this count alleged that Paris is a psychologist, an allegation which Paris asserts is incorrect. Johnson urges that regardless of whether Paris is a psychologist, he provided services in the capacity of a therapist, as defined by section 2(9) of the Confidentiality Act

(Ill. Rev. Stat. 1985, ch. 91½, par. 802(9)), and, consequently, his disclosure of confidential information was prohibited by the Confidentiality Act, thereby giving Johnson a cause of action pursuant to section 15 of the Confidentiality Act, which provides, in pertinent part, that "[a]ny person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief" (Ill. Rev. Stat. 1985, ch. 91½, par. 815). Paris argues that the services he rendered to Johnson were not within the purview of the Confidentiality Act.

In *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 598-600, 445 N.E.2d 6, 10-11, this court held that a patient's allegation that a family therapist disclosed confidential information which the patient had revealed to the therapist during counseling stated a cause of action for breach of the implied therapist-patient contract and for violation of the Confidentiality Act. In *Martino*, this court noted the 1976 Report of the Governor's Commission for Revision of the Mental Health Code, and stated:

"This report introduced the proposed Confidentiality Act by stating that it was intended to include all those persons entering into a therapeutic relationship with clients. That would include marriage counseling." 112 Ill. App. 3d 593, 599-600, 445 N.E.2d 6, 11.

■ We believe that the services provided and the disclosure which occurred in *Martino* are analogous to the services and disclosure which occurred in the instant case. Furthermore, Johnson alleged in his complaint that "Paris held himself out as a psychologist and as treating plaintiff in that capacity." The circumstances under which Johnson alleged that he was directed to seek counseling from Paris could have led Johnson to reasonably believe that Paris was a "therapist" as that term is used in the Confidentiality Act. (Ill. Rev. Stat. 1985, ch. 91½, par. 802(9).) Regardless of Paris' actual qualifications to be a therapist, Johnson alleged that Paris held himself out as a psychologist; therefore, Johnson has clearly alleged facts which, if proved, are sufficient to place Paris' conduct within the purview of the Confidentiality Act, which includes in the definition of therapist "any *** person not prohibited by law from providing such services or from holding himself out as a therapist if the recipient reasonably believes that such person is permitted to do so" (Ill. Rev. Stat. 1985, ch. 91½, par. 802(9)).

■ The fact that Johnson may have incorrectly referred to Paris as a psychologist is not fatal to count V of Johnson's complaint for at least two reasons. First if Johnson can prove that Paris held himself out as a psychologist, and that he reasonably believed that Paris was

a psychologist, it would be improper to dismiss his complaint based upon an insignificant mistake which was caused by the opposing party. Second, even if Paris is not a psychologist, Johnson alleges that he and Paris entered into what was apparently a "therapeutic relationship," and Paris provided services which are within the purview of the Confidentiality Act. (*Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 445 N.E.2d 6.) Pursuant to the holdings in *Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 390 N.E.2d 72, and *Champaign National Bank v. Illinois Power Co.* (1984), 125 Ill. App. 3d 424, 465 N.E.2d 1016, as well as section 2—612(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—612(b)), a complaint should not be dismissed for such a minor defect if the complaint still reasonably informs the opposing party of the nature of the claim he is called upon to meet. We fail to see how Paris could possibly be prejudiced by the fact that Johnson refers to him in his complaint as a psychologist rather than a therapist, and conclude that Johnson's complaint against Paris pursuant to the Confidentiality Act reasonably informed Paris of the claim he was called upon to meet.

■ Regarding Johnson's claim that Paris breached an implied contract, Paris argues that this claim was properly dismissed because Johnson failed to properly allege the elements of such a contract. We believe that Johnson's complaint adequately alleges a breach of contract by Paris. The complaint alleged that Paris offered his services and that Johnson agreed to accept them. The contract was allegedly formed in December of 1980, as is apparent from Johnson's allegation that he began the counseling sessions immediately following Heppner's December 1980 conversation with Ewald. Johnson alleged that he repeatedly drove from Lincoln to Champaign to attend these counseling sessions and that he divulged confidential information to Paris in reliance upon Paris' obligation not to disclose this information. Johnson's detrimental reliance and his driving to and from Champaign constituted sufficient consideration to validate the contract. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 330, 371 N.E.2d 634, 639; *Land of Lincoln Savings & Loan v. Michigan Avenue National Bank* (1982), 103 Ill. App. 3d 1095, 1103, 432 N.E.2d 378, 384.) The terms of the contract were simply that Paris was to provide counseling services and Johnson was to attend the sessions and accept the counseling. Furthermore, Johnson's complaint adequately specifies the breach of the contract. It alleges that the contractual relationship between Paris and Johnson obligated Paris not to disclose confidential information obtained as a result of that relationship and that Paris breached the contract by disclosing that informa-

tion. Count V adequately alleged a breach of contract by Paris and sufficiently informed Paris of the nature of the claim he was called upon to meet. Consequently, the circuit court erred by dismissing the breach-of-contract claim contained in count V of Johnson's complaint. Ill. Rev. Stat. 1985, ch. 110, par. 2—612(b).

In count III of his complaint, Johnson alleged that LCC violated section 5 of the Confidentiality Act (Ill. Rev. Stat. 1985, ch. 91½, par. 805) by redisclosing information learned from Paris to faculty members, students, and members of Johnson's family. LCC first argues that count III was properly dismissed because Paris' services were not covered by the Confidentiality Act. This argument is without merit because, as we have previously discussed, Paris' services were covered by the Confidentiality Act. *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 445 N.E.2d 6.

■ LCC next argues that "[a]ssuming Mr. Paris did not have permission to disclose confidential information to LCC, LCC as the recipient of the information from Mr. Paris is under *no statutory duty* to keep any of Mr. Johnson's alleged communications to Mr. Paris confidential." LCC further argues that "[t]he Confidentiality Act only requires consent for the first disclosure and once the first consent has been given then consent to redisclose down the chain may need to be obtained. *If, however,* the first disclosure is not consented to, then the subsequent redisclosure to others down the chain is not actionable." LCC bases this argument upon its interpretation of section 5(d) of the Confidentiality Act (Ill. Rev. Stat. 1985, ch. 91½, par. 805(d)), which provides:

> "No person or agency to whom any information is disclosed under this Section may redisclose such information unless the person who consented to the disclosure specifically consents to such redisclosure."

Neither LCC nor Johnson have cited any cases which have decided the issue of whether the Confidentiality Act prohibits redisclosure of confidential information if the initial disclosure was unauthorized, and through our research, we have been unable to find any cases which have discussed this issue. As the supreme court stated in *People v. Bratcher* (1976), 63 Ill. 2d 534, 543, 349 N.E.2d 31, 35:

> "[T]he prime consideration in construing a statutory enactment is to give effect to the intent of the legislature. In ascertaining this intent, the entire statute must be considered [citation], and also 'the evil to be remedied and the object to be attained' [citation]."

Section 3(a) of the Confidentiality Act (Ill. Rev. Stat. 1985, ch. 91½,

par. 803(a)) shows the legislature's general intent to prevent any unauthorized disclosure of confidential information.

LCC notes that the Confidentiality Act provides for both civil and criminal liability (Ill. Rev. Stat. 1985, ch. 91½, pars. 815, 816) and argues that the Confidentiality Act must be construed strictly in favor of the accused. Although we agree with this general proposition of law, we also note that a penal statute "must not be construed so rigidly as to defeat the intent of the legislature." (*People v. Bratcher* (1976), 63 Ill. 2d 534, 543, 349 N.E.2d 31, 36.) Furthermore, as the United States Supreme Court stated in *Kordel v. United States* (1948), 335 U.S. 345, 349, 93 L. Ed. 52, 56, 69 S. Ct. 106, 109, *rehearing denied* (1948), 335 U.S. 900, 93 L. Ed. 435, 69 S. Ct. 298, "there is no canon against using common sense in reading a criminal law, so that strained and technical constructions do not defeat its purpose by creating exceptions from or loopholes in it."

We believe that LCC's interpretation of section 5(d) of the Confidentiality Act (Ill. Rev. Stat. 1985, ch. 91½, par. 805(d)) is inconsistent with the intent of the entire statute and constitutes an unintended loophole which defeats one of the basic purposes of the Confidentiality Act. Although the wording in section 5(d) of the Confidentiality Act (Ill. Rev. Stat. 1985, ch. 91½, par. 805(d)) appears to have been imperfectly drafted, we believe that the legislature intended to proscribe the type of redisclosure which occurred in the instant case, regardless of whether consent to the initial disclosure has been given. Consequently, we conclude that count III of Johnson's complaint adequately alleges a cause of action for a violation of the Confidentiality Act by LCC and that the circuit court erred by dismissing count III of Johnson's complaint.

In count II of his complaint, Johnson alleged that LCC tortiously interfered with the contract between Johnson and Paris. In count VI of his complaint, Johnson alleged that Paris tortiously interfered with the contract between Johnson and LCC. The first argument raised by both Paris and LCC in support of the circuit court's dismissal of counts II and VI is that Johnson failed to allege sufficient facts to establish that he had a valid contract with Paris and LCC. We have previously discussed these issues and determined that Johnson alleged sufficient facts to establish the existence of contracts between himself and both LCC and Paris.

■ LCC argues that Johnson's reference to Paris as a psychologist in his complaint is fatal to his claim against LCC for tortious interference with the contract between Paris and Johnson. Paris argues that Johnson's reference to him as a psychologist in his complaint is

fatal to his claim against Paris for tortious interference with the contract between LCC and Johnson. We fail to see the logic in either of defendants' arguments in this regard. First, as we have previously stated, the fact that Johnson may have erroneously referred to Paris as a psychologist instead of as a therapist is a minor defect which is not a sufficient reason to support dismissal of any of the counts of Johnson's complaint. (Ill. Rev. Stat. 1985, ch. 110, par. 2—612(b).) Furthermore, any party, not just a psychologist, may be liable for tortious interference with a contract. See *Meadowmoor Dairies, Inc. v. Milk Wagon Drivers' Union* (1939), 371 Ill. 377, 381, 21 N.E.2d 308, 311; *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 444 N.E.2d 579.

We conclude that counts II and VI of Johnson's complaint contain sufficient information to reasonably inform Paris and LCC of the nature of the claim they were called upon to meet, and, consequently, the circuit court erred by dismissing these counts. Ill. Rev. Stat. 1985, ch. 110, par. 2—612(b).

■ In count IV of his complaint, Johnson alleged that LCC invaded his privacy by publishing allegations regarding his "sexual conduct and orientation." In count VII of his complaint, Johnson alleged that Paris similarly invaded his privacy. In support of the circuit court's dismissals of counts IV and VII, Paris and LCC argue that the one-year statute of limitations contained in section 13—201 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—201) applies to these counts and since the action was not commenced within this one-year period, it was proper for the circuit court to dismiss counts IV and VII as barred by the statute of limitations. We agree with defendants' arguments in this regard.

Section 13—201 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—201) provides:

> "Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued."

Johnson states that the crux of his claims in counts IV and VII is that defendants unreasonably disclosed private facts and not that they published untrue information. Johnson attempts to draw a distinction between his claims for invasion of privacy and those which are covered by section 13—201 of the Code of Civil Procedure (Ill. Rev Stat. 1985, ch. 110, par. 13—201) and argues, without citing any supporting authority, that his claims of invasion of privacy are controlled by the five-year statute of limitations for "actions not otherwise provided for" (Ill. Rev. Stat. 1985, ch. 110, par. 13—205). We believe that John-

son's claims against both defendants for invasion of privacy are clearly governed by the plain language of section 13—201 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—201), which expressly refers to publication of matter violating the right of privacy. Furthermore, Illinois courts have expressly recognized a cause of action for invasion of privacy based upon public disclosure of private facts, which is precisely the situation we are presented with here. (See *Geisberger v. Willuhn* (1979), 72 Ill. App. 3d 435, 390 N.E.2d 945.) Consequently, we conclude that the circuit court properly dismissed counts IV and VII as barred by the applicable statute of limitations. Ill. Rev. Stat. 1985, ch. 110, par. 13—201.

■■ Johnson next argues that counts V and VI properly prayed for punitive damages. Johnson cites *Hutchinson v. Brotman-Sherman Theatres, Inc.* (1981), 94 Ill. App. 3d 1066, 419 N.E.2d 530, for the proposition that "[a]lthough punitive damages are not recoverable for breach of contract as a general rule, an exception to that rule exists where the breach of contract also constitutes an intentional tort." Paris concedes that *Hutchinson* allows a plaintiff to pray for punitive damages for a separate tort that is related to a breach of contract cause of action, but points out that Johnson sought punitive damages for the separate intentional tort of interference with contractual rights in count VI of his complaint. In *Hutchinson*, the plaintiff set forth his alleged cause of action in tort by filing a separate count in which he prayed for punitive damages. This is precisely what Johnson did by filing count VI. *Hutchinson* does not allow a plaintiff to recover punitive damages pursuant to his contract count as well as his tort count, as Johnson is attempting to do here. Consequently, we conclude that the prayer for punitive damages pursuant to count V was properly dismissed, whereas the prayer for punitive damages pursuant to count VI is proper and should not have been dismissed.

■■ Johnson next argues that his prayer for attorney fees pursuant to count V should not have been dismissed. As we have previously stated, count V states a cause of action for a violation of the Confidentiality Act. Section 15 of the Confidentiality Act provides, in pertinent part, "[r]easonable attorney's fees and costs may be awarded to the successful plaintiff in any action under this Act." (Ill. Rev. Stat. 1985, ch. 91½, par. 815.) Thus, the prayer for attorney fees pursuant to count V should not have been dismissed.

Johnson next argues that his prayer for attorney fees pursuant to count VI should not have been dismissed. Johnson cites *Waldinger v. Ashbrook-Simon-Hartley, Inc.* (C.D. Ill. 1983), 564 F. Supp. 970, 980, for the proposition that "[t]he general rule prohibiting an award of at-

torney's fees does not apply when the fees are assessed against a third party whose misconduct has caused the plaintiff to sue someone else." The facts in *Waldinger* are clearly distinguishable from the facts we are faced with in the instant case. First, the underlying contract in *Waldinger* specifically provided for the recovery of attorney fees. Furthermore, the court in *Waldinger* relies upon *Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47, a case which is also readily distinguishable from the instant case. *Sorenson* involved a successful malpractice action against an attorney for his failure to timely file certain tax forms. The attorney fees awarded were not those incurred in litigating the malpractice action, but rather were the fees paid to another attorney in an attempt to obtain refunds of tax penalities assessed against the plaintiff as a result of the defendant's negligence. This is a completely different situation than that which is present in the case at bar, where Johnson is attempting to recover attorney fees incurred in pursuing his causes of action.

We are unpersuaded by Johnson's argument regarding the propriety of a prayer for attorney fees pursuant to count VI, and choose to follow the general rule of law as set forth in *M & W Gear Co. v. AW Dynamometer, Inc.* (1981), 97 Ill. App. 3d 904, 915, 424 N.E.2d 356, 366. Consequently, we conclude that the prayer for attorney fees pursuant to count VI of Johnson's complaint was properly dismissed.

■■ The final argument raised by Johnson is that count VI and VII of his complaint each contain a correct *ad damnum* which should not have been stricken. Since we have previously ruled that count VII was properly dismissed, we need not discuss the *ad damnum* contained in that count. In support of the circuit court's decision to strike the *ad damnum* contained in count VI, Paris cites section 2—604 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—604), which provides, in pertinent part:

> "In actions for injury to the person, any complaint filed which contains an ad damnum, except to the minimum extent necessary to comply with the circuit rules of assignment where the claim is filed, shall, on motion of a defendant or on the court's own motion, be dismissed without prejudice."

Johnson contends that his complaint for tortious interference with contractual rights is not an action for injury to the person, and, therefore, the provision which is quoted above does not apply to count VI of his complaint. Paris simply contends, without presenting any argument or citing any authority, that Johnson's action against him for tortious interference with contractual rights is an action for injuries to the person and that section 2—604 of the Code of Civil Procedure

should apply to count VI of Johnson's complaint.

Our research has not revealed any cases which have decided the precise issue of whether a claim for tortious interference with contractual rights is an action for an injury to the person. However, several Illinois courts have held that claims for tortious interference with contractual rights of others are governed by the five-year statute of limitations contained in section 13—205 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—205), which governs all actions not otherwise provided for, instead of section 13—202 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—202), which governs actions for personal injury. (See *Brainerd v. Flannery* (1978), 56 Ill. App. 3d 991, 373 N.E.2d 26, *cert. denied* (1978), 439 U.S. 983, 58 L. Ed. 2d 654, 99 S. Ct. 573; *Colucci v. Chicago Crime Com.* (1975), 31 Ill. App. 3d 802, 334 N.E.2d 461.) We conclude that Johnson's claim against Paris for tortious interference with contractual rights is not an action for injuries to the person within the meaning of section 2—604 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—604), and, consequently, the circuit court erred by striking the *ad damnum* contained in count VI of Johnson's complaint.

■■ As defendants point out, the general rule is that if a party appeals the dismissal of his complaint without presenting an amended complaint to the trial court, he waives his right to later amend his complaint. (*Mlade v. Finley* (1983), 112 Ill. App. 3d 914, 445 N.E.2d 1240; *Cuerton v. Abbott Laboratories, Inc.* (1982), 111 Ill. App. 3d 261, 443 N.E.2d 1069.) However, as Johnson points out:

"Eight months after a lengthy oral argument and plaintiff's submission of his Consolidated Memorandum in Opposition to Defendant's Motion to Dismiss or Strike, the Circuit Court entered a one-sentence order dismissing each count of plaintiff's Complaint on at least one non-amendable ground. That order granted all seven of defendant's Motions to Dismiss, thus dismissing plaintiff's sixteen-page, seven-count complaint in its entirety. It gave no indication of the reasoning behind the dismissal, even though defendants propounded multiple grounds for dismissal for every count but one. The order did not grant plaintiff's leave to amend.

Defendants argue that plaintiff's failure to amend his Complaint before filing this appeal constitutes an election to stand on the pleadings. However, because defendants advanced arguments including at least one non-amendable defect for each count, no count would have been saved by repleading. Thus, re-

pleading would have been a futile effort, resulting in defendants' refiling virtually the same motions to dismiss and further delaying these already protracted proceedings."

We thoroughly agree with Johnson's argument in this regard. Repleading under these circumstances would indeed have been futile, leading to a needless delay in the administration of justice. The trial court should have exercised its power pursuant to section 2—612(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—612(a)), which provides:

"(a) If any pleading is insufficient in substance or form the court may order a fuller or more particular statement. If the pleadings do not sufficiently define the issues the court may order other pleadings prepared."

This court has been granted the following powers pursuant to Supreme Court Rule 366 (87 Ill. 2d R. 366), which provides in pertinent part as follows:

"(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,

(1) exercise all of any of the powers of amendment of the trial court;
* * *

(3) order or permit the record to be amended by correcting errors or by adding matters that should have been included;
* * *

(5) enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the enforcement of a judgment, that the case may require."

We hereby exercise our power to make an order that should have been made by the circuit court and allow Johnson to amend his complaint to change his reference to Paris from psychologist to therapist and split the two separate causes of action contained in count V into two separate counts.

In summary, we conclude that counts I, II, III, V and VI of Johnson's complaint were improperly dismissed but that counts IV and VII of the complaint were properly dismissed because they are barred by the applicable statute of limitations. Also, the prayer for punitive damages contained in count V and the prayer for an award of attorney fees contained in count VI were properly stricken. The *ad damnum* contained in count VI was improperly stricken.

For the reasons stated herein, the order of the circuit court is hereby reversed in part, affirmed in part, and remanded to the circuit court for further proceedings consistent with the views expressed in this opinion.

Reversed in part, affirmed in part, and remanded.

GREEN and MORTHLAND, JJ., concur.