**BOULEVARD BANK NATIONAL ASSOCIATION, a national banking association, Plaintiff/Counter–Defendant,**

v.

**ADAMS NEWSPAPERS, INC., a Delaware corporation, and Stephen Adams and Adams Publishing of Royal Oak, Defendants/Counter–Plaintiffs,**

and

Dan–Mar Enterprises, Inc. d/b/a Mark Ridley's Comedy Castle, a Michigan corporation, and Columbia Construction Management, Inc., a Michigan corporation, Defendants.

No. 91–CV–73747.

United States District Court,
E.D. Michigan, S.D.

March 18, 1992.

Stephen E. Glazek, James S. Fontichiaro, Barris, Sott, Denn & Driker, Detroit, Mich., for plaintiff/counter-defendant Boulevard Bank Nat. Ass'n.

Timothy D. Kelly, Mary Lynn Jahnke, Carol Baker, Kelly & Berens, Minneapolis, Minn., Penny L. Deitch, Dawn L. Phillips, Karen Russell, Phillips & Russell, Birmingham, Mich., for defendants/counter-plaintiffs Adams Newspapers, Inc., Stephen Adams and Adams Pub. of Royal Oak.

Richard A. Polk, Birmingham, Mich., for defendant Mark Ridley's Comedy Castle.

## OPINION AND ORDER

FEIKENS, District Judge.

Before me are plaintiff's motions for summary judgment on counts 1 through 3 of its first amended complaint and for dismissal or summary judgment on Adams Newspapers, Inc., Stephen Adams and Adams Publishing of Royal Oak, Inc.'s (Adams defendants) counterclaim. Because I find that no issues of material fact exist and plaintiff is entitled to relief as a matter of law, the motions are GRANTED.

## BACKGROUND

This action is based upon the breach of a promissory note by Adams Newspapers, Inc. (ANI), and Stephen Adams' refusal to honor an unconditional guaranty securing that note. In January 1989, Boulevard Bank National Association (BBNA) loaned ANI one million seven hundred thousand dollars ($1,700,000) to enable ANI to purchase "The Source," a weekly paper circulating in southeastern Michigan. The loan and note were secured by a junior mortgage on a building located in Royal Oak, Michigan. BBNA also took a security interest in all of ANI's assets, particularly those of "The Source." As further security, Stephen Adams executed a "secured guaranty agreement" under which he agreed to unconditionally guarantee ANI's performance. To secure the guaranty, Adams pledged all of the issued and outstanding shares of ANI to BBNA. Final payment of the note was due no later than June 30, 1994.

In spring 1990, ANI approached BBNA proposing to restructure the loan agreement. Adams was consolidating his debt with another lender, and that lender required that "The Source" be part of its security free of BBNA's interest. BBNA agreed to release its security interest in "The Source" on the following conditions: (1) the elevation of BBNA's junior mortgage on the Royal Oak property to first position; (2) the continuation of Adams' guaranty; and most significantly, (3) the acceleration of the note maturity date to December 31, 1990. A modification and allonge were so executed. The original loan documents, as well as the modification agreement, contain an integration clause.

ANI failed to pay the note on the due date. In letters dated January 3, 1991 and February 14, 1991, ANI's vice president

requested a two-year extension of the loan due date. BBNA was unwilling to further modify the loan and accordingly sent written notice declaring the loan in default and demanding payment.

ANI now alleges that in the course of modifying the original loan agreement, an oral agreement was reached to the effect that the source of repayment for the restructured loan was no longer the operational income from the "The Source," but rather the sale or refinance of the property located in Royal Oak, Michigan. Accordingly, ANI counterclaimed that the note should be reformed to reflect the oral understanding of the parties based on mutual mistake or unilateral mistake and misrepresentation. ANI claims that it is entitled to a reasonable period of time, but no longer than the original 1994 due date, to sell or refinance the Royal Oak property and use the proceeds to retire BBNA's note.

The Adams defendants also counterclaimed that BBNA violated the Anti-Tying statute, 12 U.S.C.A. § 1972(1)(C) (West 1989), claiming that one of the reasons BBNA decided not to further modify the loan agreement was that a related Adams-controlled publication, Chicago Magazine, had been sold and no longer maintained its deposits with the bank.

The parties agree that due to a choice of law clause in the loan agreement, the loan documents are to be construed under Illinois law while the mortgage is to be construed under Michigan law.

ANALYSIS

(1) *Parol Evidence*

■ Typically, parol evidence is inadmissible to vary or contradict the clear written provisions of integrated contracts, including mortgage loan agreements. *NAG Enterprises, Inc. v. All State Industries, Inc.,* 407 Mich. 407, 285 N.W.2d 770 (1979); *Ditzik v. Schaffer Lumber Co.,* 139 Mich. App. 81, 360 N.W.2d 876 (1984); *Suriano v. EMI Services Corp.,* 181 Ill.App.3d 789, 130 Ill.Dec. 507, 537 N.E.2d 836 (1989); *Land of Lincoln Sav. & Loan v. Michigan Ave. Nat. Bank,* 103 Ill.App.3d 1095, 59 Ill.Dec. 794, 432 N.E.2d 378 (1982).

■ ANI does not deny that the parol evidence rule would normally make evidence of prior oral agreements inadmissible, only that such evidence is admissible when a party alleges a mutual mistake of fact or unilateral mistake combined with fraud or misrepresentation. However, in *Land of Lincoln,* under facts very similar to those here, the court held:

> The defense is asserting that the agreement as embodied in the note and mortgage is not the agreement of the parties, but that the agreement was that an extension would be granted if the defendants were unable to sell the property. Thus, the defendants are seeking to vary the unambiguous terms of the agreement through evidence prior and contemporaneous oral agreements. This, the parol evidence rule does not permit.

■ Moreover, to prove mutual mistake, ANI would have to show by clear and convincing evidence that (1) the parties actually agreed to the extension; (2) the parties intended to put that agreement into writing; and (3) a variance exists between the prior agreement and the writing. *Aetna Screw Products Co. v. Borg,* 116 Ill. App.3d 206, 71 Ill.Dec. 893, 451 N.E.2d 1260 (1983). This is impossible—the loan documents unequivocally state that the note matured December 31, 1990, and section 13(c) of the modification agreement states that:

> This agreement contains the whole agreement between the parties hereto as to the subject matter hereof, and there are no other terms, obligations, covenants, representations, warranties, statements, or conditions, oral or otherwise, of any kind.

■ To prove unilateral mistake, ANI would have to show by clear and convincing evidence that the parties agreed to the extension but that BBNA fraudulently induced ANI to execute the integrated modification agreement. *Aetna Screw,* 71 Ill. Dec. at 896, 451 N.E.2d at 1263; *Great American Federal Savings & Loan Ass'n v. Grivas,* 137 Ill.App.3d 267, 91 Ill.Dec. 870, 484 N.E.2d 429 (1985). Again, this is

impossible—where a term is unambiguous on its face its insertion in the contract cannot be fraudulent. *Grivas,* 91 Ill.Dec. at 875, 484 N.E.2d at 434.

■ ANI also argues that BBNA is estopped from asserting the parol evidence rule because it justifiably relied on BBNA's oral promise to obtain repayment of the note from the sale or refinance of the Royal Oak property. This claim lacks merit since the defendants could not possibly have relied upon the alleged oral agreement which is not referenced in, and in fact is contradicted by, the express written terms of the modification agreement that ANI requested and executed.

Accordingly, no issues of material fact exist. The loan modification agreement is clear and unambiguous, and the Adams defendants are in default. To hold otherwise would mean that no matter how well-crafted and completely integrated a contract may be, if a party submits an affidavit that asserts a different oral agreement exists but was left out by mutual or unilateral mistake, parol evidence would always be admissible and a trial would always be necessary. Such a result would turn the law of contracts on its head.[1]

### (2) *The Anti–Tying Claim*

■ BBNA also seeks dismissal or summary judgment of the Adams defendants' counterclaim under 12 U.S.C.A. § 1972(1)(C) (West 1989), the anti-tying statute. This statute seeks to prohibit anti-competitive banking practices designed to force customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or services that they desire.

■ The Adams defendants allege that BBNA conditioned the further modification of the note (*i.e.,* the requested extension after ANI defaulted) on the maintenance of the bank's relationship with Chicago Magazine, another Adams-controlled publication.

This claim is clearly untenable. The original loan documents in no way tied the extension of credit to ANI on the condition that the Chicago Magazine accounts be maintained at BBNA. Furthermore, it was factually impossible for BBNA to condition the proposed modification on the maintenance of those accounts since the parties admit that BBNA was aware the magazine had been sold and Adams no longer controlled those accounts prior to ANI's request for an extension. This argument also undercuts ANI's previous position—that an agreement (albeit an oral one) to extend the note's due date already existed.

ACCORDINGLY, plaintiff's motions for SUMMARY JUDGMENT on counts one through three (1–3) of its amended complaint and for SUMMARY JUDGMENT on defendants anti-tying counterclaim are GRANTED. Defendant's counterclaim for reformation is DENIED. Plaintiff's attorneys are directed to draw an appropriate order.

IT IS SO ORDERED.

---

[1]. The Adams defendants' counterclaim for reformation of the contract based on the alleged oral agreement is likewise barred by the statute of frauds. *See Jayson Investments, Inc. v. Kemp,* 746 F.Supp. 807 (N.D.Ill.1990); *Brunette v. Vulcan Materials Co.,* 119 Ill.App.2d 390, 256 N.E.2d 44 (1970).